Weygandt, C. J.
 

 This is another of the many so-called preference cases that have been troubling the bench • and bar rather persistently during recent months. As usual the chief difficulty encountered lies
 
 *477
 
 not so much in ascertaining the pertinent principles of law as in their application to the slightly varying factual settings of the individual cases.
 

 In the instant controversy the chief and controlling question is met at the very threshold. Did the parties by their written agreement intend to create a relationship of trustee and
 
 cestui
 
 or merely that of debtor and creditor? Restating the question more simply and specifically, was the bank intended to be a trustee or merely a debtor? The difficulty of determining the answer is intensified by reason of the necessity of relying upon mere inference alone. This is cogently illustrated by the written statement of one of plaintiffs’ counsel that “At the time of entering into the aforesaid agreement it was not understood or known by any of the members of the committee or their attorneys the exact manner in which the funds in question would be handled by the bank.”
 

 The most helpful part of the record is Exhibit A, which is attached to the agreed statement of facts. This is the written agreement of June 1, 1931, around which the entire dispute centers. As a preliminary matter it will be helpful to note that this contract created at least one express trust. A careful study of the document plainly discloses a fiduciary relationship between the depositing stockholders and the'plaintiffs as constituting the protective committee. This is illustrated by paragraph four which contains the following language:
 

 “The Depositors constitute the Committee their sole and exclusive attorneys and agents for the purpose of carrying out this agreement, and to execute, in their behalf, such instruments in writing, and to do and perform all such acts as said Committee, acting by a majority thereof, may deem proper to protect the interests of the Depositors. The Depositors hereby assign and transfer to the Committee the legal title to
 
 *478
 
 the stock deposited hereunder, together with all the voting, dividend and other rights and privileges thereof. ’ ’
 

 However, it is well-settled law that when a trustee properly deposits known trust funds in a bank they are not thereby impressed with a new trust solely by reason of their known original trust nature.
 
 State, ex rel. Fulton, Supt. of Banks,
 
 v.
 
 Main, Sheriff,
 
 128 Ohio St., 457, 191 N. E., 742;
 
 Busher, Clerk,
 
 v.
 
 Fulton, Supt. of Banks, idem,
 
 485, 191 N. E., 752. Therefore, the single fact that a known fiduciary relationship existed between the protective committee and the depositing stockholders, did not
 
 ipso facto
 
 create a new or second trust between the committee and the bank. In other words the bank did not automatically become a trustee merely because the committee so acted. Unmindfulness of this principle is one cause of the confusion that has arisen in this sort of “preference” case.
 

 Then what relationship did the protective committee and the bank intend to create between themselves when they drew the written agreement? Does the agreement provide for a general deposit, a special deposit, or a deposit for a specific purpose? In the absence of evidence to the contrary a deposit in a bank is presumed to be general in its nature.
 
 State, ex rel. Fulton, Supt. of Banks,
 
 v.
 
 Main, supra; Busher, Clerk,
 
 v.
 
 Fulton, Supt. of Banks, supra.
 
 At page 42 in the American Law Institute Restatement of the Law of Trusts appears the following pertinent expression:
 

 “If one person pays money to another, it depends upon the manifested intention of the parties whether a trust or a debt is created. If the intention is that the money shall be kept or used as a separate fund for the benefit of the payor or a third person, a trust is created. If the intention is that the person receiving the money shall have the unrestricted use thereof,
 
 *479
 
 being liable to pay a similar amount whether with or without interest to the payor or to a third person, a debt is created.
 

 “The intention of the parties will be ascertained by a consideration of their words and conduct in the light of all the circumstances. Among the circumstances which may be of importance in determining the intention of the parties are: (1) the presence or absence of an agreement to pay interest on the money paid; (2) the amount of money paid; (3) the time which is to elapse before the payee is to be called upon to perform his agreement; (4) the relative financial situation of the parties; (5) the relations between the parties; (6) their respective callings; (7) the usage or custom in such or similar transactions.”
 

 And at page 45 the rule is well stated as follows:
 

 “A general deposit of money in a commercial bank does not create a trust, but a relation of debtor and creditor, the depositor'having in addition to his rights as creditor certain contract rights against the bank. This is true although the depositor is a trustee; thus, if a trustee properly makes a general deposit of trust money in a commercial bank, the bank is a debtor to the trustee and the trustee holds the claim against the bank in trust for the beneficiary. * * *
 

 “If money is deposited in-a bank for a special purpose, the bank is a trustee or bailee of the money if, but only if, it is the understanding of the parties that the money deposited is not to be used by the bank for its own purposes.”
 

 The written agreement occupies eight pages of the record and is of too great length to be here quoted in full. It is sufficient to observe that very broad powers Avere lodged in the stockholders’ protective or trust committee; that “The Committee’s determination to accept claims and/or notes and its determination of the proportion of cash and claims, and/or notes” was “final and conclusive”; that the depositors constituted
 
 *480
 
 “The Committee their sole and exclusive attorneys and agents for the purpose of carrying out this agreement, and to execute, in their behalf, such instruments in writing, and to do and perform all such acts as said Committee, acting by a majority thereof, may deem proper to protect the interests of the depositors”; that the depositors assigned and transferred “to the Committee the legal title to the stock deposited” together with all rights and privileges thereunder; that the committee was empowered “to pass upon and determine the validity of stock presented for transfer and the validity and sufficiency of notes or claims assigned or endorsed in partial satisfaction of the amount required to be paid at the time of the deposit of the stock or at any later time”; that the committee could “refuse to accept said stock for deposit”; that “any moneys deposited with the Depositary hereunder or received by the Committee from any source” could be “used by the Committee to defray its proper expenses,” to form “a new company or association,” to “continue the business of the company,” to “provide suitable working capital therefor,” to put “into operation * * * any plan or program for reorganization or liquidation which the Committee may determine upon,” or “for any other purpose which the Committee may determine to be for the best interests of the depositors”; and that the committee was empowered “to employ and fix the compensation of the Depositary, counsel, attorneys, agents, or such employees as in its opinion shall be necessary or useful,” to compensate the committee members for their services, to pay expenses incurred, to terminate or amend the agreement, to “levy assessments upon the Depositors from time to time,” to fix the time within which stock might be accepted for deposit, to adopt its own rules of procedure, to fill “all vacancies in the Committee,” and even “to construe the terms of
 
 *481
 
 this agreement when necessary,” which “construction thereof shall be binding upon all parties hereto.”
 

 No further recital is necessary to demonstrate that the funds on deposit might be used by the committee in many different ways. As in the ease of all ordinary or general deposits the bank was required simply to have on hand a similar amount to meet any withdrawal order of the committee from time to time. The bank was not responsible for the use to which the money was put by the committee. This is further shown by the provision in the agreement that “The Depositary shall be entitled to rely upon any direction, order or representation of the Committee, its employees, or attorneys, and shall not be liable for the default or misconduct of any officer, agent, servant, attorney or person employed by it in pursuance hereof, except for wilful misconduct or gross negligence.”
 

 Nowhere is there any evidence that this deposit was to be segregated and not commingled with the general funds of the bank for use in the usual course of banicing practice. On the contrary the various sums were simply deposited by means of checks drawn upon other banks. These checks were received by the trust department, deposited by it in the commercial department, and entered upon the uninvested trust funds account.
 

 Furthermore, it should be noted that the power of selecting a depositary bank was vested in and exercised by the committee and not the stockholders. Then too, when a claim was filed with the defendant for these funds it was asked that they be returned, not to the stockholders, but to the committee for the benefit of the former.
 

 The plaintiffs stress the point that the agreement did not provide for the payment of interest by the bank, and none was paid. Of course this fact is pertinent but not conclusive.
 
 Busker, Clerk,
 
 v.
 
 Fulton, Supt. of Banks, supra; Fulton, Supt. of Banks,
 
 v.
 
 Es
 
 
 *482
 

 canaba Paper Co.,
 
 129 Ohio St., 90, 193 N. E., 758. Restatement of the Law of Trusts, page 43. In this connection it is also urged by the plaintiffs that not only was no interest provided for or paid, but it was stipulated that the committee was to compensate the bank for its services. There are at least two difficulties with this contention. In the first place the agreement permitted but did not require the committee to compensate the bank, and secondly, the record does not disclose that any such compensation was paid.
 

 The plaintiffs rely also upon the case of
 
 Fulton, Supt. of Banks,
 
 v.
 
 University of Dayton,
 
 129 Ohio St., 90, 193 N. E., 758. However, it should be observed that even the judges who concurred in the disallowance of the preference were clearly of the opinion that the University of Dayton and the bank had created a trust relationship between themselves. As illustrative of the marked distinctions between that case and the instant one, the document there employed was designated as a “mortgage deed of trust,” and it was expressly agreed that the property was to be held by the bank “as trustee.” Furthermore, that agreement specifically provided that no interest was to be paid, and that the bank was to receive a fixed rate of compensation for its services as trustee.
 

 Under the particular circumstances of the instant case the court is of the opinion that a trust relationship was created between the stockholders and the committee but not between the committee and the bank, and that the deposit arranged by the committee was general in its nature, thereby making the bank simply a debtor of the creditor committee. By reason of the foregoing views it becomes unnecessary to discuss the remaining contentions of counsel, and it follows that the decree of the Court of Appeals must be
 
 *483
 
 reversed and a final judgment entered for the defendant, Superintendent of Banks.
 

 Judgment reversed and final judgment for plaintiff in error.
 

 Stephenson, Williams, Matthias, Day and Zimmerman, JJ., concur.
 

 Jones, J., dissents.