The Seitz Theatre Co., Appellee, *v.* The Commercial Banking & Trust Co., Trustee, et al., Appellants.

(Decided February 19, 1940.)

*Messrs. Flynn, Frohman, Buckingham, Py & Kruse,* for appellee.

*Mr. Thomas J. Herbert,* attorney general, *Mr. Dudley F. Smith* and *Mr. A. F. Weichel,* for appellants.

Overmyer, J. In this suit the appellee, as plaintiff, is seeking to be adjudged entitled to a preference in the payment of a claim against the appellant bank, which is in process of liquidation by the Superintendent of Banks. The amount sought to be so preferred is $9,727.02, having been reduced from the original amount of a claim of $19,454.04 by dividends paid to general creditors.

The Common Pleas Court found appellee entitled to the preference and entered judgment accordingly, and the Superintendent of Banks appealed. The cause has been submitted here on the pleadings, a transcript of the evidence taken below, and the arguments and briefs of counsel as an appeal on law and fact.

The controversy arose from the following facts:

On March 1, 1928, The Seitz Theatre Company,

hereafter referred to as the company, entered into an agreement of trust with the Security Savings Bank & Trust Company of Toledo, Ohio, by the terms of which it conveyed in trust the lands and theatre building owned by it at Sandusky, Ohio, for the security of the holders of the company's first mortgage bonds then outstanding. The agreement also constituted the Security Savings Bank & Trust Company as the company's fiscal agent for the payment of the principal and interest on the bonds. Later the Security Savings Bank & Trust Company and The Home Trust Company, both of Toledo, consolidated and became The Security-Home Trust Company, and it succeeded to the rights and duties as trustee under The Seitz Theatre Company deed of trust.

On June 17, 1933, the Superintendent of Banks took over The Security-Home Trust Company for liquidation and it became necessary to secure a successor trustee for the trust here involved. The president and another officer and director of the appellee company threupon went to Toledo and learned that the trust funds of the company in such closed bank had been theretofore redeposited in the commercial department thereof and were consequently impounded by the Superintendent of Banks. It is not claimed that the trust agreement then in effect prohibited such use of the money by the trustee bank.

A few days later the president and other officers of the appellee company, after conferences among themselves and directors, called upon a Mr. Mitchell, trust officer and a vice-president and director of The Commercial Banking & Trust Company of Sandusky, Ohio, and told him of their experience in the Toledo bank and expressed a desire to transfer the trust and trusteeship to the Sandusky bank. It is testified by the officers and directors present at the conference (except the president, then deceased) that Mr. Mitchell expressed not only a willingness but was eager to have

such transfer made, stating that he wished to build up the trust department of the bank.

The transfer later was duly effected, following further conferences between the officers and directors of the company and Mr. Mitchell of the bank. The appellant bank became the successor trustee under the company's deed of trust, becoming so, however, it is contended by the company, upon a separate and supplemental oral agreement between the company and the bank resulting from the conferences above referred to, which agreement is represented in the record on the part of the company by the testimony of those of the officers and directors of the company who were present at the conferences (except the president, Wm. F. Seitz), and which testimony was received over the objection of appellant bank, as follows:

Mr. Mitchell was told that the result of the impounding of funds at Toledo placed the company on a month to month basis, endangering its safety; that the company did not wish to repeat the experience had at Toledo by having its funds impounded in case of the closing of the bank; that the conditions upon which the transfer would be made were that the funds were to be kept segregated and separate and not redeposited in the commercial department of the bank; that Mr. Mitchell agreed to an arrangement whereby the funds were to be held as a special deposit and not commingled with other funds of the bank; that it would be necessary by the terms of the deed of trust to secure the written consent of the bondholders to a transfer of the trusteeship because the deed of trust specifically provided that the trustee and all successor trustees should always be a Toledo bank; that the trust would have to be supplemented in that respect; and that the bondholders would not give such consent to transfer unless they could be assured that future funds so deposited by the company under the trust would be deposited as a separate and special fund in

the trust department of the bank, available at all times to be applied to the purposes of the trust.

The officers and directors of the company testifying state that one of their number at first requested a bond from the bank for the fulfillment of these conditions, but that Mr. Mitchell said such bond would not be necessary and that the trust would be accepted and the deposits thereunder received and handled entirely as requested by the representatives of the company. Thereupon the consent of the bondholders was secured and filed upon these representations and promises of the bank, and the transfer of the deed of trust and trusteeship effectuated. Later the funds so deposited were redeposited by the Sandusky bank in its commercial department without the knowledge or consent of the company, and the trust funds commingled with other moneys of the bank. When the Sandusky bank, on July 22, 1933, was taken over for liquidation the trust funds of the company were impounded and this suit followed. On February 6, 1934, The Toledo Trust Company was appointed trustee and is now acting as such.

The appellant in this record offers no testimony, Mr. Mitchell being deceased, and rests its defense upon the claim that the testimony of the officers and directors above referred to is incompetent, being an attempt to vary the terms of the deed of trust, and of course if such testimony is incompetent the suit must fail for the reason that the original trust agreement did not prohibit such use of the trust funds. If the testimony referred to is competent and is considered with all the facts and circumstances shown, it clearly proves an oral agreement supplementing the written agreement touching this deposit as claimed by the company, and it also proves that when the Sandusky bank accepted the trust and trusteeship it did so not only under the deed of trust but also under the oral agreement supplementing it. It had to be supple-

mented in one respect, *viz.*, regarding the requirement as to a Toledo bank only being trustee, and it could be orally supplemented in other respects. See 5 Wigmore on Evidence, 307, Section 2430 *et seq.*; 17 Ohio Jurisprudence, 523, Section 425.

It is the opinion of this court that the testimony was and is competent, and we are referred to, and consider as authority for our view, the case of *Sears & Nichols Corp.* v. *Squire, Supt. of Banks,* 132 Ohio St., 140, 143, 144, 5 N. E. (2d), 486, from which we quote as follows:

"Since the agreement itself contained no provision preventing the trust company from depositing funds in its commercial department, counsel for the appellant contend that the above-quoted clause, which relates to deposits made by the appellee, is wholly insufficient to establish a special deposit or trust on behalf of the appellee. The quoted clause does not specify the terms of the deposit or whether it be special or general. An oral arrangement was thereafter entered into between the parties to the agreement, to the effect that the deposits should be segregated and applied to the payment of trade acceptances. This would not contravene the rule that written contracts cannot be varied by parol testimony, since the quoted clause in the written agreement, although it provided for a deposit of funds in the bank, did not stipulate the character of such deposits; it avoided reference to any provision determining whether the deposits should be general and subject to check or whether they were to be special deposits to be held in trust for a particular purpose."

Decisions of the Supreme Court of Ohio and textbook authorities consistently hold and say that:

"In determining whether title to funds deposited has passed to the depositary bank, regard must be had to the agreement under which the deposit is made, and to all the conditions and circumstances of the arrangement." *Fulton, Supt. of Banks,* v. *Escanaba*

*Paper Co.,* 129 Ohio St., 90, 193 N. E., 758. See, also, *Squire, Supt. of Banks,* v. *Oxenreiter,* 130 Ohio St., 475, 200 N. E., 503; *Squire, Supt. of Banks,* v. *American Express Co.,* 131 Ohio St., 239, 2 N. E. (2d), 766.

Appellant bank contends that although the funds deposited by the company under the deed of trust or otherwise were not to draw interest, because of their transitory and temporary character, nevertheless one payment of interest on the funds was, credited by the bank. There is no evidence whatever that such action was because of any requirement under the deed of trust or the oral agreement, the officials of the company testifying that they had no knowledge of such credit of interest, and section 13 of the trust agreement specifically providing that no interest was to be paid on trust funds thereunder. It is apparent that such credit, if made, was purely voluntary and would be of no help as a criterion. The trustee was to be paid fees for its services, both by the terms of the deed of trust and by the oral agreement, as testified to and not disputed, and this fact seems to us to negative the claim of the bank as to its right to use the funds.

It is stipulated that there was cash in the vault of the bank, at all times here involved and at the closing of the bank, in excess of the trust deposits made by the company.

Without further extending this opinion, we find and hold that the undisputed facts and circumstances shown by this record by competent evidence require a finding in favor of the company.

*Decree for appellee.*

Carpenter and Lloyd, JJ., concur.