Turner, J.
 

 The decision in this case depends upon whether there were sufficient available credits on the books of The Union Trust Company in favor of appellant when the Superintendent of Banks took charge to •offset completely appellant’s two notes. Stated differently : 'W as the superintendent required to credit the savings deposits standing in the name of appellant at the time he took charge or did he have the right to wait until the expiration of the. guaranty periods and the presentation of releases or waivers from the municipalities before crediting the various savings aceounts on the appellant’s notes, in the meantime accruing interest on the amount of the uncredited savings accounts. Appellee states the question: “Were the •deposits about which we are here concerned available to the defendant-appellant for set-off purposes in June •of 1933?”
 

 Appellant was engaged in the paving business and bad entered into contracts with various municipalities which provided that appellant should deposit in a bank ■selected by it (appellant) a sum of money which together with the accrued interest thereon should remain in pledge as a guaranty that the workmanship and materials furnished were up to specifications and that the improvement would remain in good and sound condition for a certain length of time.
 

 On March 31, 1931, for the stated purpose of inducting the trust company to make additional loans from time to time, appellant made an assignment to the trust company of all present and future guaranty
 
 *307
 
 funds. This assignment contained the following provision :
 

 “It is understood and agreed-that this assignment is made as security for payment of all obligations and liabilities of the undersigned to the trust company now ■existing or hereafter incurred * *
 

 The fact that these savings accounts had been assigned by appellant to the trust company for the purpose of making them available as set-offs to be applied •by the trust company to appellant’s indebtedness makes it unnecessary to discuss the large number of cases •cited by counsel.
 

 The fact that appellant delivered the savings account pass books to the municipalities is not signifi-cant. As the trust company was insolvent and in the hands of a conservator and later in the hands of the Superintendent of Banks no withdrawal from these .savings accounts could be honored. Even where the •savings bank is solvent, the officers may waive production of the pass books. (See Section 710-143, General Code.)
 

 We are not here dealing with any asserted right of .any third party. No municipality had made any claim to any part of these savings accounts at or since the 15th day of June 1933. Since then the full amounts -of these savings accounts have been credited on appellant’s notes as the guaranty periods expired and releases were presented. Interest subsequent to the date on which the Superintendent of Banks took charge is the sole matter in dispute.
 

 Section 11315, General Code, provides:
 

 “The defendant, may set forth in his answer as many grounds of defense, counterclaim and- set-off as he may have, whether such as heretofore have been denominated legal or equitable, or both. But the several defenses must be consistent with each other, and each must refer in an intelligible manner to the cause
 
 *308
 
 of action which it is intended to answer.”
 

 Section 11320, General Code, provides:
 

 “When it appears that a new party is necessary to a final decision on a set-off, the court shall permit the new party to be made by a summons to answer the set-off, if, owing to the insolvency or non-residence of the plaintiff, or other cause, the defendant will be in danger of losing his claim, unless permitted to use it as a set-off.”
 

 As stated in Bates’ Pleading, Practice Parties and Forms (4 Ed.), 303, Section 346a:
 

 “There may be special equities justifying the allowance of a counterclaim or set-off, as between a several demand or liability on one side and a joint demand or liability on the other, where justice will not be obtained unless the court will disentangle the reciprocal liabilities. For example: Insolvency of one of the parties, whereby the other is in danger of losing his claim, is a very common instance (though not universally acquiesced in, hut recognized in G. C. §11320).”
 

 Was the superintendent justified in charging interest while holding appellant’s savings accounts or should not these credits already assigned to the trust company for the purpose of security have been considered in striking a balance?
 

 Appellee contends that we may not look at this matter from the standpoint of final results but must look at it only as of June 15, 1933, when the Superintendent of Banks took charge. We agree with this viewpoint.
 

 The Superintendent of Banks took charge for the purpose of liquidating an
 
 insolvent
 
 bank, a fact which we must keep in mind all the times
 

 As stated in 7 Zollmann Banks and Banking, 11, Section 4393:
 

 “The sum due to the insolvent is merged into the sum due from him, and whoever is thereby determined' to be the debtor is held only for the balance.
 

 
 *309
 
 “The balance is the claim, not the set-off, which is merely the means of arriving at the balance.”
 

 When the Superintendent of Banks took charge, the ■trust company was no longer in a position to carry out its contract to recognize any future right which might arise in any of the municipalities. To make use of appellee’s paraphrase of the language of Mr. Justice -Cardozo, the rights of the municipalities had become “illusory.”
 

 “An insolvent cannot be heard to say that his contract is violated where it is apparent that he cannot perform that contract.” 7 Zollmann Banks and Banking, 71, Section 4471.
 

 The trial court correctly stated that:
 

 “The villages and cities had no primary ownership in these funds. Their interests were prospective and •contingent and might never accrue.”
 

 Appellee contends that these savings accounts were •special deposits or at least deposits made for a specific purpose. On account of the assignment prior to the ■accrual of any right in any municipality, it is immaterial whether these savings accounts be treated at the time of insolvency as general or special deposits or as •deposits made for a specific purpose.
 

 A special deposit creates a bailment, a deposit for a •specific purpose creates a trust, while a general deposit creates merely the relation of debtor and credit- or. Whether there is a special deposit, a deposit for a specific purpose, or a general deposit, depends upon the contract between the
 
 bank
 
 and the
 
 depositor.
 

 The burden of proof is upon the party claiming that 'the deposit was not a general one or that the relationship between the bank and the depositor was other than-•debtor and creditor. 5 Zollmann Banks and Banking,. '563, Section 3593.
 

 Even in the absence of the assignment of these accounts to the trust company, there is nothing in the
 
 *310
 
 record to negative the presumption that they were general accounts creating the relation between the trust company and appellant of debtor and creditor. On the contrary, the record shows these accounts to be interest bearing which is almost conclusive proof that the deposits were general and created only the relation of debtor and creditor between the trust company and appellant.
 

 Every deposit in a bank is presumed to be a general one and to create the relation of debtor and creditor between the bank and the depositor unless the evidence establishes the contrary. In the case of
 
 Squire, Supt. of Banks,
 
 v.
 
 Oxenreiter,
 
 130 Ohio St., 475, 200 N. E., 503, this court held:
 

 “1. In the absence of evidence to the contrary a deposit in a bank is presumed to be general in its nature.
 

 “2. When a trustee properly deposits known trust funds in a bank a new fiduciary relationship is not thereby created between the trustee and the bank solely by reason of the known original trust nature of the'funds; the bank is a debtor to the trustee and the trustee holds the claim against the bank in trust for the beneficiary.
 

 “3. If one person pays money to another, it depends upon the manifested intention of the parties whether a trust or a debt is created.
 

 “4. If money is deposited in a bank for a special purpose, the bank is a trustee or bailee of the money if it is the understanding of the parties that the money deposited is not to be used by the bank for its own purpose.
 

 “5. If the intention is that the person receiving the money shall have unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or a third person, a debt is created.”
 

 The distinction between a general deposit and a
 
 *311
 
 special deposit is made also in the case of
 
 Busher, Clerk of Courts,
 
 v.
 
 Fulton, Supt. of Banks,
 
 128 Ohio St., 485, 191 N. E., 752, wherein it was held:
 

 “1. A ‘general deposit’ is the placing of money in a bank by a depositor, to be repaid to him upon demand or to be drawn upon by him from time to time in the usual course of the banking business. Title to the money passes from the depositor to the bank, and such money, mingled with other money, forms a general fund from which depositors of the bank are paid. The relationship of debtor and creditor is thereby created between the bank and the depositor. Such deposit possesses no trust quality, and upon the insolvency of the bank the depositor has no right of preference.
 

 “2. A ‘special deposit’ is a deposit for safe-keeping, to be returned intact upon demand. The relationship of bailor and bailee is created between the depositor and the bank. The title remains in the depositor, and the bank acquires no property rights in the deposit. When the deposit consists of money, the bank has no right to use such money in its business or mingle it with its general funds. Upon the insolvency of the bank, a trust is created in favor of such special depositor.
 

 “3. To create a special deposit, the depositor and the bank at the time the deposit is made must intend and agree, expressly or by implication, that such deposit shall remain segregated and not be commingled with or made a part of the general funds of the bank, or be subject to its use and control in the usual and customary course of its banking business.”
 

 It has been held that the mere knowledge by the bank of the purpose for which the deposit was made will not make the deposit either special or for a specific purpose unless the bank has agreed thereto.
 

 In the case of
 
 Squire, Supt. of Banks,
 
 v.
 
 American Express Co.,
 
 131 Ohio St., 239, 2 N. E. (2d), 766, this court held:
 

 
 *312
 
 “Where money is deposited in a bank for a special-purpose it is not for that reason alone a special deposit. To constitute a deposit special in nature there-must be an agreement or understanding between the depositor and depositee that the money deposited is-not to be used in the business of the bank. In the absence of such agreement the deposit is general and. not special.”
 

 Not only was there no agreement between the bank and the appellant that the money deposited in the' savings accounts was not to be used by the bank in its business but there was a specific assignment made by the-appellant to the trust company whereby the trust company was to hold these savings accounts as collateral security for appellant’s indebtedness to the bank. The trust company was the owner of the savings deposits, subject to the rights of appellant and subject to such rights of the municipalities as might accrue.
 

 Whether there was a course of conduct between the-trust company and the municipalities which would haveestopped the trust company from denying that it held these deposits for the benefit of the municipalities is-not before us.- The municipalities made no demands against the trust company on or before June 15, 1933,. and the record discloses that no right to these deposits ever ripened in any one of the municipalities. Nor did the trust company ever regain the solvency which would have enabled it to honor any withdrawal from these accounts.
 

 In the case of
 
 Fulton, Supt. of Banks,
 
 v.
 
 Escanaba Paper Co.,
 
 129 Ohio St., 90, 193 N. E., 758, this court held:
 

 “In determining whether title to funds deposited has passed to the depositary bank, regard must be had to the agreement under which the deposit is made, and to all the conditions and circumstances of the arrangement. The payment of interest on the deposit is a
 
 *313
 
 strong, though not conclusive, indication that the title to the funds deposited has passed to the bank and that the relation between the bank and the depositor is that of debtor and creditor.”
 

 Under the facts in that case as stated by Judge Bevis, the Escanaba Paper Company “deposits in question were put by the bank into what was designated a ‘Trust Account’; that each month’s deposit consisted of a single check and that check for a uniform amount, to be applied by the bank to a single specific purpose, payment of interest and principal on the bonds; that this account was never used as a checking account nor for any purpose other than accumulating and forwarding the bond requirements to the Old Colony Trust Company of Boston. In addition, this claimant urges the provisions of the contract under which the deposits were made,
 
 i. e.,
 
 ‘such payments on account of the interest and principal
 
 to be held by
 
 you, and forwarded to the Old Colony Trust Co., Boston, Mass., not later than the fifteenth day of May and November in each year.
 

 “ ‘You agree to accept the deposits made by this •company as a special deposit and expressly covenant and agree not to apply the same against any claim, indebtedness, or other obligations whatsoever of this •company.’ (Italics ours.) ”
 

 Commenting on the foregoing, Judge Bevis said at page 98:
 

 “While the circumstances pointed out by the paper company might well be harmonized with the creation of a trust and the retention of the equitable title to the deposits, in our opinion they fall short of proving that such trust was actually created. The agreement that the money was ‘to be held’ and forwarded to Boston •on certain days might just as well have been -iarried ■out by the bank’s taking title to the deposits and forwarding an equivalent each time to the Boston insti
 
 *314
 
 tution. The agreement not to apply the deposits-against any claims, indebtedness or other obligations of this company is, at most, an agreement to relinquish, the rights of set-off, for the protection of the bondholders.”
 

 Coupled with the
 
 Escanaba Paper Co. case
 
 was the-case of
 
 Fulton, Supt. of Banks,
 
 v.
 
 University of Dayton.
 
 Here as stated by Judge Be vis at page 101, “That the parties intended to create a trust in that case is clear beyond question.” There the bank was a party to the-deed of trust.
 

 See, also,
 
 Squire, Supt. of Banks,
 
 v.
 
 American Express Co.,
 
 supra;
 
 McDonald, Admr.,
 
 v.
 
 Fulton, Supt. of Banks,
 
 125 Ohio St., 507, 182 N. E., 504, 83 A. L. R., 1107, 1110.
 

 In the case of
 
 Peterson, Recr.,
 
 v.
 
 Central National Bank & Trust Co.,
 
 219 Iowa, 699, 259 N. W., 199, it. was held:
 

 ‘ ‘ The fact that a bank agreed to carry and did carry a portion of a deposit as a special deposit, for the purpose of paying certain contingent prizes offered by the-depositor in his business, does not deprive the bank of the right to apply said special deposit on its matured claim against the depositor — subject, of course, to the rights of the prize winners, if any.”
 

 We recognize the principle that contracts may be made for the benefit of third persons but emphasize again that the trust company upon becoming insolvent was'no longer able to perform any contract for the benefit of the third persons. Under appellant’s contracts with the municipalities, appellant was not relieved by the' insolvency of the trust company from-maintaining the pledges. The record shows that in one instance at least appellant did establish a new pledge- or guaranty fund in lieu of the one theretofore maintained in the trust company.
 

 Even if there had been a condition broken in any or
 
 *315
 
 all of the guaranties made by appellant to the municipalities the trust company’s insolvency would not have relieved either appellant or its bondsmen from still performing. Therefore, if rights of the municipalities had matured on June 15,1933, the trust company would still be bound to give appellant credit for the savings accounts for the reason that the trust company was no longer able to perform its contract.
 

 On June 15, 1933, the trust company’s books showed a balance in favor of appellant and, therefore, neither the Superintendent of Banks nor the appellee was entitled to charge interest thereafter. Under the circumstances of this case an insolvent will not be heard to say, “I can’t give you credit now because later some right against your deposit may accrue.”
 

 By reason of the fact that title to these savings accounts had been vested in the trust company by virtue of the assignment, we do not need to go to the extent in the application of equitable principles to set-offs and mutuality as was done in the cases of
 
 Merrill and Another
 
 v.
 
 Cape Ann Granite Co.,
 
 161 Mass., 212, 36 N. E., 797, 23 L. R. A., 313, and
 
 Nashville Trust Co.
 
 v.
 
 Bank,
 
 91 Tenn., 336, 18 S. W., 822, 15 L. R. A., 710.
 

 In the Massachusetts case it was said at pages 216 and 217:
 

 “In dealing with this question we are not embarrassed by technical rules as to parties or pleadings, nor limited by statute provisions as to set-off, but are at liberty, in the exercise of a jurisdiction possessed by the Court of Chancery before the enactment of such statutes, to apply the doctrine of set-off as grounded upon natural equity.
 
 Ex parte Stephens,
 
 11 Ves., 24, 27. No doubt the general rule in equity as well as at law is that demands to be set off must be mutual, and that debts accruing in different rights cannot be set off against each other. But when there are peculiar circumstances which make it necessary,
 
 *316
 
 as the only way to prevent clear injustice, to allow the set-off of debts not mutual but accruing in different rights, this may be done by courts of full equity jurisdiction. It has been held that in such cases they look beyond forms to the essence of transaction out of which the demands arise, and beyond the nominal parties to those to be affected by the decree; and if a party to be so affected has a clear natural equity, arising out of the transaction and superior to any equity which can be urged in favor of those for whose benefit the claim to an equitable set-off is resisted, such courts may order debts not mutual, but accruing in different rights to be set off and made to discharge each other.
 
 * *
 
 *”
 

 In the Tennessee case the court said at page 351:
 

 “Does it lie in the mouth of an insolvent to say that his contract is violated, and thereby defeat so manifest an equity, when it is apparent that he cannot himself perform that contract? Should a court of conscience be so over-scrupulous of the rights of one party to a contract as to refuse to permit a slight variance even as to bim, when it can plainly see that thereby it will wholly destroy the contract as to the other party?”
 

 See, also,
 
 Scott
 
 v.
 
 Armstrong,
 
 146 U. S., 499, 507;
 
 Cooper
 
 v.
 
 Fidelity Trust Co.,
 
 132 Me., 260, 268, 170 A., 726;
 
 Hibert
 
 v.
 
 Lang,
 
 165 Pa., 439, 442, 30 A., 1004;
 
 People
 
 v.
 
 California Safe Deposit & Trust Co.,
 
 168 Cal., 241, 141 P., 1181, L. R. A. 1915A, 299; 36 Ohio Jurisprudence, 514, Section 9.
 

 For the reason that the legal title to these savings accounts was in the insolvent trust company we see no occasion to discuss the niceties of statutory set-off rights. Neither do we see any necessity of discussing the many cases cited by appellee involving
 
 asserted rights
 
 to special deposits or deposits created for a specific purpose.
 

 
 *317
 
 Had there been no assignment by appellant to the trust company of these savings accounts, the question of mutuality would not have prevented an equitable set-off. The rule is stated in 9 Corpus Juris Secundum, 990, Section 517&, as follows:
 

 ‘ ‘ N evertheless, want of mutuality is not always permitted to defeat the right of set-off' if the claims arise in substantially the same night, and it is especially true that a court of equity may disregard the strict rule of mutuality and permit a set-off of claims in different rights where they are in substantially the same right, and where wrong or injiistice may thus be avoided. Thus, where the person depositing the funds of another is liable therefor notwithstanding the insolvency of the bank, such deposit may be set off against his personal debt, and it has also been held that a personal debt may be set off against a claim or account in the name of another but which is equitably the property of the bank’s debtor.”
 

 In 7 American Jurisprudence, 458, Section 630, it is said:
 

 “The rule as to mutuality, however, while strictly applied at law, is not so applied in equity, where to allow the same would defeat a clear equity or permit irremediable injustice; such is the situation when either the bank or the depositor has become insolvent.”
 

 7 Zollmann Banks and Banking, 73, Section 4471, contains the following pertinent quotation and comment :
 

 “It has therefore been stated that the trend of all modern authority Jeans toward liberality in the allowance of set-offs, and particularly is this true in the case of the insolvency of the party against whom the set-off is claimed, to the end that only the true balance may be required to be paid to the representative of the estate of the insolvent.’ This principle is supported by a great many authorities.”
 

 
 *318
 
 At page 69, Section 4471,
 
 ibici,
 
 Zollmann states the general rule as follows:
 

 “Courts fully recognize that a set-off statute is but the imperfect codification of an equitable principle, and hence, where the words of the statute fail to cover the situation they will go behind the statute and in favor of the party which is not-insolvent apply the equitable doctrine upon which the statute is founded.”
 

 In the case of
 
 Baker
 
 v.
 
 Kinsey,
 
 41 Ohio St., 403, 404, this court held:
 

 “The holder of a promissory note who took it after maturity holds it subject to every objection, including equitable set-off, to which it was subject in the hands of bis assignor.’ ’
 

 Being of the opinion that there were sufficient available credits on the books of The Union Trust Company in favor of appellant on June 15, 1933, to have completely liquidated appellant’s two notes and that neither The Union Trust Company nor the Superintendent of Banks, as liquidator thereof, had the right to accumulate or charge any interest against appellant after June 15,1933, and these notes having been acquired by appellee after maturity, the judgment of the Court of Appeals should be and hereby is reversed and the judgment of the Court of Common Pleas should be and hereby is affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman and Bell, JJ., concur.
 

 ■ Williams, J., not participating.