**In re Mary A. LEE, Debtor.**

**William B. LOGAN, Jr., Chapter 7 Trustee, Plaintiff,**

v.

**CONSUMER CREDIT COUNSELING SERVICE OF CENTRAL OHIO, INC., Defendant.**

**Bankruptcy No. 2–89–00067.**
**Adv. No. 2–89–0350.**

United States Bankruptcy Court, S.D. Ohio, E.D.

April 17, 1991.

William B. Logan, Jr., Columbus, Ohio, for plaintiff.

Hamilton J. Teaford, Worthington, Ohio, for defendant.

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

This matter is before the Court on the Motion for Summary Judgment filed by

William B. Logan, the duly-appointed Trustee in the Chapter 7 case, and the Memorandum Contra Trustee's Motion for Summary Judgment and Motion for Summary Judgment filed by Consumer Credit Counseling Service. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E).

## I. *Facts*

The uncontested facts reflected by the record may be summarized as follows: Prior to filing for relief in bankruptcy, Mary A. Lee ("Debtor") contracted with the Defendant, Consumer Credit Counseling Service ("CCCS"), in order to set up a Debt Scheduling Agreement ("Agreement"). CCCS is a nonprofit organization that helps debtors avoid bankruptcy by creating a plan to pay a debtor's creditors. Its services are compensated by the creditors. According to the terms of the Agreement between CCCS and Debtor, Debtor was required to make bi-weekly payments of Four Hundred Sixty–Two Dollars ($462.00) to CCCS. The funds were deposited in a trust for the benefit of Debtor's creditors and, pursuant to the Agreement, Debtor was not entitled to a refund on any portion of the payments until all the debts were paid in full. After CCCS received the payments, it would distribute the money on a pro-rata basis to the creditors.

In December of 1988, Debtor made the required bi-weekly payments to CCCS. On January 5, 1989, Debtor filed a voluntary Chapter 7 petition. Prior to the time of filing, Debtor's attorney, Frederick Berkemer ("Berkemer"), telephoned CCCS and informed them of Debtor's imminent bankruptcy. Subsequent to the filing, Berkemer again contacted CCCS and this time instructed them not to distribute the funds they were holding to the creditors. Berkemer then called CCCS' attorney, Hamilton J. Teaford ("Teaford"),[1] to instruct him to hold the December payments from dis-

bursement. CCCS, however, proceeded to disburse the funds to Debtor's creditors.

The Trustee, William Logan ("Plaintiff"), filed an action for turnover of the funds and a Motion for Summary Judgment. CCCS opposed the Motion, and also filed a Motion for Summary Judgment.

## II. *Arguments of the Parties*

The issues before the Court were presented by way of Plaintiff's Motion for Summary Judgment which seeks judgment compelling CCCS to turn over monies it received from Debtor prior to Debtor's filing for Chapter 7 relief. According to Plaintiff, CCCS is a custodian holding Debtor's property which is rightfully part of the bankruptcy estate. In essence, Plaintiff asserts that CCCS' function is that of a custodian under 11 U.S.C. § 101(10)(C), which provides that a "custodian" is a:

> *trustee, receiver or agent* under applicable law, *or under contract,* ... that is authorized to take charge of property of the Debtor for the purpose of ... general administration of such property *for the benefit of the debtor's creditors.* (Emphasis added.)

Plaintiff contends that, under the Agreement an agency relationship was established between the parties, in which CCCS was an agent for Debtor because Debtor consented to CCCS acting on her behalf.

According to the terms of paragraph six of the Agreement, "all sums paid to [CCCS] are deposited in trust for the benefit of the [Debtor's] creditors." Thus, Plaintiff contends CCCS is a custodian. As a custodian, CCCS is required under 11 U.S.C. § 543(a) and (b) to turn over the funds it received from Debtor.

CCCS asserts that it is not a "custodian" within the meaning of the Bankruptcy Code because it did not control all, or even a substantial portion of Debtor's assets. CCCS argues that the statute was meant to address entities who take charge of a debtor's estate to administer it and liquidate it. Rather, CCCS urges that it operates as a

---

1. The Court notes that there may be two Mr. Teafords working with this case, Hamilton J. Teaford and Murray R. Teaford. The Plaintiff refers to Hamilton in his brief, but Murray is the attorney of record for CCCS in this adversary proceeding.

"conduit for payments." Since CCCS was not a prepetition liquidator, it argues that it is not within the statutory definition of "custodian." Furthermore, CCCS asserts that, for the Plaintiff to have a right of turnover, the property sought must belong to Debtor. CCCS contends that Debtor has no right to the funds that are the subject of the turnover action, since the Agreement states that "NO PAYMENT WILL BE RE-FUNDED UNLESS ALL OF [Debtor's] DEBTS HAVE BEEN PAID IN FULL." (Emphasis in original.)

### III. Standards for Summary Judgment

Motions for summary judgment are governed by Fed.R.Civ.Proc. 56(c), which states, in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The United States Supreme Court established the standard for determining motions for summary judgment when it held that:

On summary judgment the inferences to be drawn from the underlying facts contained in such materials (pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits) must be viewed in the light most favorable to the party opposing the motion.

*United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176, 177 (1962).

Professor James W. Moore has articulated the burden the proponent of a motion for summary judgment must meet:

The Courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts which, under applicable principles of substantive law, entitles him to judgment as a matter of law. The courts hold the movant to a strict standard to satisfy his burden, the movant must make a showing that is quite clear what the truth is and that excludes any real doubt as to the existence of any genuine issue of material fact.

6 MOORE'S FEDERAL PRACTICE para. 56.15[3] (2d ed. 1991) (footnotes omitted).

### IV. Discussion

### A. Applicability of § 543: Is CCCS a custodian?

Section 543 of the Bankruptcy Code provides in relevant part as follows:

(a) A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.

(b) A custodian shall—

(1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, products, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and

(2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian.

Section 101(10) of the Bankruptcy Code defines "custodian" as:

(A) receiver or trustee of any of the property of the debtor, appointed in a case or proceedings not under this title;

(B) assignee under a general assignment for the benefit of the debtor's creditors;

(C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of

entering a lien against such property or for the purpose of general administration of such property for the benefit of the debtor's creditors; ....

Section 101(10) is broadly interpreted to include not only prepetition liquidators but also entities like CCCS "who administer the assets of a debtor for the general protection of its creditors." *In re Redman Oil Co., Inc.*, 95 B.R. 516, 521 (Bankr.S.D. Ohio 1988). *See In re Gold Leaf Corp.*, 73 B.R. 146, 148 (Bankr.N.D.Fla.1987) ("[The] definition is broad and includes third parties who have taken charge of the debtor's assets for the general benefit of creditors."); 4 *Collier on Bankruptcy*, para. 543.01 (15th ed. 1990) ("[c]ourts have used a broad rather than mechanical definition of the term 'custodian' ....").

▬ The relationship between Debtor and CCCS is determined by the Agreement. It must be established that CCCS was either a trustee, receiver or an agent. Plaintiff's position is that CCCS is an agent authorized by Debtor to act on her behalf. This Court disagrees. "[T]he test as to whether a person is an agent of another is the *right of control* of one over the other." *Ross v. Burgan*, 163 Ohio St. 211, 126 N.E.2d 592 (1955) (emphasis in original). Under the terms of the Agreement, Debtor had little right of control over CCCS' actions. In fact, once monies were paid over to CCCS, Debtor could not recover them or direct their payment. On the contrary, the Agreement severely restricted Debtor's conduct in terms of Debtor's credit affairs. For example, under paragraph four of the Agreement, Debtor was not permitted to use credit without CCCS permission.

▬ Although this Court finds that CCCS is not an agent, it does find that CCCS is a trustee and hence a "custodian" for purposes of § 101(10). A trust may be created by either an agreement or contract. A trust is created where a person agrees that property to which he has legal title shall be given to another for the benefit of a third person. *Squire v. Oxenreiter*, 130 Ohio St. 475, 478, 200 N.E. 503 (1936). Furthermore, where the instrument creating the trust states that the donor's delivery

ered property is to be irrevocably held by a trustee for the purpose of paying the donor's obligations, a valid and subsisting trust in favor of the obligees has been created. *See Cleveland Trust Co. v. Pomeroy*, 16 Ohio Op.2d 131, 134–35, 87 Ohio L.Abs. 502, 177 N.E.2d 410 (C.P. Cuyahoga, 1961).

According to the Agreement, CCCS holds the monies received from Debtor "in trust for the benefit of [Debtor's] creditors." *See* paragraph six of the Agreement. Debtor was required to give CCCS $462.00 bi-weekly. According to the Agreement, the money was irrevocably held by CCCS; the funds could only be paid over to Debtor's creditors. CCCS acted as a "trustee, ... under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor ... for the purpose of general administration of such property for the benefit of debtor's creditors;" thus, CCCS' position and role fit within § 101(10)(C). Since, CCCS is a custodian within the meaning of § 101(10), it is subject to the turnover requirements of § 543.

### B. Turnover Under § 543: Is the Money Property of the Estate?

▬ Section 543(b)(1) of the Code requires a custodian to "deliver to the trustee any property of the debtor held by or transferred to such custodian ... that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case ..." To establish a right of turnover, the following elements must be proven:

(1) that a custodian has possession, custody or control of property; and

(2) that such property is property of the debtor.

11 U.S.C. § 543(b)(1); *In re Redman Oil Co., Inc.*, 95 B.R. at 521. It has already been determined that CCCS is a custodian within the meaning of 11 U.S.C. § 101(10). The final issue is whether the property that is the subject of the turnover action is Debtor's property. The burden of establishing that Debtor has an interest in the funds held is on Plaintiff. *Weiss–Wolf,*

*Inc. v. Israel Discount Bank Ltd. (In re Weiss–Wolf, Inc.),* 60 B.R. 969, 975 (Bankr. S.D.N.Y.1986); *In re National Equip. & Mold,* 64 B.R. 239, 245 (Bankr.N.D. Ohio 1986); *Wisconsin Barge Line, Inc. v. Slay Warehousing Co., Inc. (In re Wisconsin Barge Line, Inc.),* 69 B.R. 16, 18 (Bankr.E. D.Mo.1986). State law controls the determination of whether or not the estate has an interest in the property for which turnover is sought. *Redman,* 95 B.R. at 522; *Kempf v. Internal Revenue Service (In re American Way Food Service Corp.),* 48 B.R. 79 (Bankr.W.D.Mich.1985); *In re Mortgage Funding, Inc.,* 48 B.R. 152 (Bankr.D.Nev.1985); *National Equip. & Mold,* 64 B.R. at 245.

Under Ohio law:

> Subject to certain well known restrictions, one can dispose of his own property as he pleases. If he elects to set up a trust *inter vivos* he may do so, and when the settlor, under a trust agreement, transfers and delivers his property to a trustee with the intention of passing title, and designated beneficiaries take immediate vested interests in such property, the trust is perfected, notwithstanding the settlor may reserve various rights and powers in relation to the trust estate.

*Cleveland Trust Co. v. White,* 134 Ohio St. 1, 6, 15 N.E.2d 627 (1938).

 The Agreement states in paragraph six unambiguously and in large letters "... NO PAYMENT WILL BE REFUNDED UNLESS ALL OF MY/OUR DEBTS HAVE BEEN PAID IN FULL." (Emphasis in original.) Debtor reserved no rights to monies paid to CCCS, other than the right to monies left in the trust after all the creditors were paid in full. Debtor clearly intended to and did relinquish any right that she had to the funds once she turned over the sums to CCCS. When Debtor made the bi-weekly payments in December of 1988, Debtor lost all rights to the funds. Thus, Plaintiff/Trustee cannot now require that they be turned over as part of the estate. Plaintiff stands in the shoes of Debtor and cannot obtain greater contractual rights than those Debtor held

at the commencement of the case. *In re Wright,* 39 B.R. 623 (D.S.C.1983); *In re DeWeese,* 47 B.R. 251 (Bankr.W.D.N.C. 1985); *In re Neideffer,* 96 B.R. 241 (Bankr. D.N.D.1988). If Debtor did not have a right to the property at the commencement of the case, Plaintiff cannot acquire rights through a turnover action. *See In re Sommer,* 28 B.R. 95 (Bankr.D.Colo.1983) (although automobile was purchased in name of debtor and debtor's minor son, it was not property of the estate since the son paid for it with his own money and debtor had no interest in car); *In the Matter of Douglas,* 10 B.R. 283 (Bankr.D.Neb.1981) (debtor denied turnover of property in which he had no right of use or possession).

### V. *Conclusion*

There are no disputed facts in this case. Both parties are in agreement as to the sequence and manner of events. The only issues involved were issues of law which have now been decided. Accordingly, Plaintiff has failed to meet the burden of establishing that the facts and applicable substantive law entitle him to a summary judgment. CCCS, however, has met the burden of proving that it is entitled to summary judgment as a matter of law.

Based upon the foregoing, the Motion for Summary Judgment filed by Plaintiff is hereby DENIED, and the Motion for Summary Judgment filed by CCCS is GRANTED.

A separate Final Judgment will be entered in accordance with the foregoing.

IT IS SO ORDERED.