# THOMAS M. HARRINGTON

## *vs.*

## JACOB BOSCHENSKI.

*Illegal Contract—Recovery of Money Paid—Evidence.*

Where an illegal contract is still executory, in that one party thereto has not performed his part thereof, the other may repudiate or disaffirm it, and recover the consideration paid by him.                                                    pp. 30, 31

In an action to recover money paid for liquor, illegally sold to plaintiff, which was to be subsequently delivered, a question asked of defendant as to where he expected to get the liquor which he was selling was properly excluded as immaterial. p. 32

A question asked defendant's agent as to whether he knew that the money paid by plaintiff was for liquor to be illegally obtained from the government was properly excluded as irrelevant.                                                    p. 32

*Decided January 11th, 1922.*

Appeal from the Baltimore City Court (DAWKINS, J.).

Action by Jacob Boschenski against Thomas M. Harrington and others. From a judgment against said named defendant, he appeals. Affirmed.

The cause was submitted on briefs to BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Lindsay C. Spencer, J. Calvin Carney, C. Milton Dickerson,* and *Dickerson & Nice,* for the appellant.

*Wm. Curran* and *Lawrence S. Kaufman,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from a judgment for eight hundred dollars, recovered by the appellee against the appellant in the Baltimore City Court.

The action, which was upon the common counts, was brought not only against the appellant, Thomas M. Harrington, but also against August Gerecht and James Y. Bonsal, but the jury, upon the instructions of the court, rendered a verdict for Gerecht and Bonsal, upon which a judgment in their favor was entered.

The record discloses that Gerecht, at the time a police justice of the Central District Station of Baltimore, in March, 1920, called the appellee, Jacob Boschenski, over the 'phone at 1647 Thames Street, in said city, where he was conducting a near-beer business, but Boschenski, at the time and for several days thereafter, was in an intoxicated condition and unable to answer the 'phone. His wife answered the call and communicated the fact of Boschenski's condition to Gerecht, when she was told by the latter that "he had very important business to tell her husband." On the next day, Boschenski being still in the same condition, Mrs. Boschenski went to see Gerecht at the police station, and was there told by him that her husband could buy some whiskey if he wanted it; and she, as she testified, inquired of him, "how can you get whiskey; it is against the law." He replied, "the government lets people have some whiskey by permit, and the government is going to deliver it in government trucks * * *, and in case the ban is lifted you have some on hand." He then asked her how much she wanted, and she said forty cases. The price to be paid therefor was ninety dollars per case. She returned home, and on the next day, accompanied by her brother, Henry Karcz, to whom she had told of her conversation with Gerecht on the preceding day, she again went to the station house to see Gerecht. On this occasion she carried with her $3,600, and her brother, also a dealer in near-beer, on South Broadway, carried with him $2,250 with which to purchase

twenty-five cases of whiskey. When they arrived at his office, she was asked by Gerecht if she had the money, and she told him she had, and placed it before him wrapped in paper with her brother's money, and Gerecht promised to send them by mail a receipt for it, and also told them that the whiskey would be delivered in a short time. She did not see Gerecht after that visit to his office, had no dealings with Harrington, and did not know Bonsal at all.

Henry Karcz, the brother of Mrs. Boschenski, corroborated his sister as to what was said and done upon their visit to Gerecht's office, and further testified that Gerecht said to them that "the government men and government trucks would deliver the whiskey to the house."

Boschenski, as both he and his wife testified, did not know of the conversation of Gerecht with his wife over the 'phone, or of her visit to Gerecht's office, and the delivery of the money by her to him on that occasion, until the following Sunday morning, when he had recovered from his condition of intoxication. She then told him what she had done, and assured him that it was all right, as the government was going to deliver the whiskey in its trucks, and that he need have no apprehension.

Boschenski testified that, about a week after his wife had left the money with Gerecht, he called upon Gerecht, and was told by him that he would get the whiskey in a few days. Boschenski then expressed to him some doubt as to the deal being all right, but he was told, as he said, by Gerecht, that "the government men would deliver it in front of his home and nobody could stop them." Then he said "that is good enough." He waited another week and with Karcz, his brother-in-law, again called upon Gerecht and asked him about the whiskey, and Gerecht sent him to Harrington's place, who was also a dealer in near-beer in the city since prohibition had gone into effect, and said that he would meet him there in a short while. They went to Harrington's, and in a few minutes Gerecht came in. He then asked about the

whiskey, and was told by Mr. Harrington that the whiskey would be delivered in a few days, and said to him "not to forget to break the boxes and scrape the labels off" the bottles. Boschenski said, "he was not going to do anything like that," and demanded that his money be given back to him; "that he wanted his money and did not want to break boxes and wash off labels." He further testified that about another week later he met Gerecht upon the street, and Gerecht asked him if he had gotten his money back, and that he told him he had not. Gerecht said, "You go to Harrington and get your money. Tell him I said so"; that he said his hands were off and he had nothing to do with it; that he and Mr. Karcz went to Mr. Harrington and asked for the money and Harrington said, "I aint got no money"; and the witness replied, "Look here, Mr. Harrington, if I do not get my money I am going to do something with you. I will get my money"; that Mr. Harrington told him not to get hot-headed, to come back in a few days and he would see what he could do; that he went back on Friday of the same week and received a check for $2,800; that he asked Mr. Harrington about the $800, and Mr. Harrington told him that as soon as he got a few cents together he would give him the rest, to be quiet, not to talk too much, and he would give him the rest of his money as soon as he could; but he never got it; nor was any whiskey delivered to him; that he made no demand for the whiskey, that he was told to scrape the labels off; that he was done with whiskey after that, and wanted his money; that Gerecht never promised to return him the money, but told him to go to Mr. Harrington; that he received $2,800 by Harington's check and Mr. Harrington promised to give him the $800 balance.

Gerecht admitted that Mrs. Boschenski met him at his office at the police station, that he at the time was a magistrate, and had received from her $5,850 for whiskey to be delivered to the plaintiff, her husband, that he took the money to Harrington's saloon, and took from him a receipt therefor

in the following words: "Received of Jacob Boschenski $5,850 for merchandise," signed Thomas M. Harrington, but Harrington destroyed it; that he did not know how much of the $5,850 was paid by persons other than the plaintiff; that the plaintiff demanded the return of his money about a week after his wife gave it to him; that he saw the plaintiff on the street and later at Harrington's saloon; Karcz was with him; plaintiff made no demand on Harrington for the money in his presence, nor did he ever direct Harrington to pay him; that he did tell plaintiff to go to Harrington and demand his money. He further testified that he called up the plaintiff, at the time his wife answered the 'phone, at the instance of Harrington; that he was a go-between for Mr. Harrington. He, however, stated that he was not at any time conscious of any illegal transaction in which he and Harrington were involved, and thought what he was to do was legitimate; that he did not know that his connection in the matter involved a violation of the law, that when she came to his office, she had a bundle wrapped in a newspaper; that he said "I won't touch it"; that she told him to count it and he refused, but he asked her how much it was and she told him $5,850, all in one bundle; that she said she did not know Mr. Harrington and she asked him to take it to Mr. Harrington; that he first told her he would have nothing to do with it, but, when again asked by her and Karcz to attend to it, he told them "all right" and took it and gave it to Mr. Harrington to count it; he counted it and said it was $5,850, and gave him a receipt for it. He denied that he told Boschenski that the whiskey would be delivered in government trucks; that he had no conversation about its delivery. He further denied that anything was said in his presence by Harrington about breaking the boxes and scraping off the labels. He was then asked if he did not know that whiskey could not be bought and sold in the way it was intended to be sold in this case, and he replied "I did not read the Volstead Act. I was not interested in it." He further stated that he was not sharing in

the profits growing out of the deal, if any profits were made; that he was not to get a penny out of it himself and that he handled $5,850.

Harrington testified that he had never met the plaintiff, Boschenski, or his brother-in-law, until they came to his place of business about two months after the transaction; that is, two months after the receipt of the money from Gerecht; that it was Gerecht and not he who destroyed the receipt drawn to Boschenski; that Gerecht said, when he tore it up, "The hell with him (Boschenski), he has no receipt now." He admitted that Gerecht brought him the $5,850 and told him where it came from, and that he was to handle the money and turn it over to one McNeil, and that he had receipts for the money which he turned over to him; that McNeil was to turn it over to Bonsal, who was to deliver the whiskey to the purchaser as soon as he got the money; that the $2,800 paid by him to Boschenski was that which he had left in bank; the balance he turned over to McNeil; that he told Boschenski of the manner under which the whiskey was to be obtained, viz.: under a medicinal permit. He afterwards stated that McNeil was to deliver the whiskey to Boschenski.

Gerecht, when called to the stand, denied that he had destroyed the receipt drawn to Boschenski, and repeated that Harrington had done so, Harrington saying at the time, "I will tear it up because I have given him $2,800 of the money." And when Boschenski was again called as a witness he testified that he did not know McNeil, and that Harrington did not tell him he had given the money to him, or that either McNeil or Bonsal was to deliver the whiskey, but said, "I have your money and I will be a man and give it to you."

The docket entries show that a verdict for the defendants, Gerecht and Bonsal, was rendered by the jury upon the instructions of the court, but these instructions are not found in the record and it does not appear when or just how such

verdict was directed, but at the conclusion of the entire evidence the defendant, Harrington, asked for six instructions, all of which were refused.

The first asked that the jury be directed to find for him, the defendant, Harrington, because of the want of evidence legally sufficient to enable the plaintiff to recover against him.

By the second prayer the court was asked to instruct the jury "that since it appears from the uncontradicted evidence in this case that the agreement mentioned in the evidence was for the purchase and sale of whiskey in a manner not permitted by law, there can be no recovery in this action, and the verdict will be for the defendant, Thomas M. Harrington."

It is because of these prayers that we have fully set out the evidence in this case.

The contract here involved, which was for the purchase and sale of whiskey, is treated by the defendant as an illegal contract, and, as he contends, is one upon which there can be no recovery by the plaintiff of the money paid thereunder by him.

Assuming that the contract was an illegal one, or one the purpose or object of which was illegal, it was an executory contract, inasmuch as the defendant had not performed his part of it, and the plaintiff had the right at any time, before its execution by the defendants, to repudiate or disaffirm it, and to sue for and recover the consideration paid by him. not upon the contract, but independently of it.

In 13 *C. J.* 501 it is said, "By the weight of authority, where money has been paid in consideration of an executory contract or purpose which is illegal, the party who has paid it may repudiate the agreement at any time before it is executed, and reclaim the money, for there is a *locus poenitentiae.*"

In 6 *R. C. L.* 831, it is stated that "it has been declared that a party who pays money on an illegal contract cannot

recover it in a suit in which he insists on the existing validity of the contract, but to do so he must, before it is fully executed, rescind it, or do some act which, in law, is equivalent to rescission.   The underlying reason of the rule permitting a recovery when the contract is still merely executory is the encouragement of the abandonment of illegal contracts and to prevent a violation of the law.   The rule is, therefore, applicable regardless of whether the money is paid to the other party or to a third person such as a stakeholder.   One who repudiates the contract and demands his money from the stakeholder before the illegal act has taken place is entitled to recover." And such recovery is had not under, but independently of the contract; the contract to be treated as a nullity.   6 *R. C. L.* 833.

The fact that the plaintiff in this case repudiated the contract before its execution, and demanded of the defendant a return of the money advanced to him by the plaintiff under such contract, is fully established by the evidence.

Both Gerecht and Harrington denied the statement made by Boschenski that he was told by them or one of them to break the boxes in which the liquor was to be delivered when the same was delivered, and to scrape the labels from the bottles, which the plaintiff claimed was the basis of his belief that there was something wrong in the transaction, and which caused him to repudiate the contract; but whether they did or did not so tell him, he, nevertheless, by the undisputed evidence in the case, disaffirmed the contract, and not only demanded the return of his money, but the defendant, Harrington, returned to him a large part of it and promised to pay him the balance.

The evidence in this case was legally sufficient to go to the jury as tending to establish the liability of the defendant, Harrington, and, therefore, the said first and second prayers of the defendant were properly rejected.

The remaining prayers of the defendant were all properly refused under the law applicable to this case.

The information sought to be obtained by the question asked in the first exception was immaterial and was properly excluded. In the second exception the witness, Gerecht, was asked: "You handled it (the money) all gratuitously?" The question was objected to, and the court sustained the objection. If this was a proper inquiry, the information sought by it had already been fully given by the witness, and the defendant was not harmed by said ruling.

By the third exception Harrington was asked where he was to get the whiskey the plaintiff was to get. We fail to see how the information sought by this inquiry could have been material to the issues here involved.

The 4th, 5th, 6th, 7th, 8th and 9th exceptions were to the refusals of questions asked Harrington, involving the inquiry as to what disposition he made of the money paid over to him. This information he was thereafter permitted to give without objection, he stating substantially all that was asked him by these questions. Consequently the defendant was not harmed by the rulings of the court thereon.

The tenth and last exception to the evidence is to the ruling of the court in sustaining the objections to the question asked Gerecht if he knew that the money (given him) was for whiskey to be illegally obtained from the government? The answer to this question could not have had any bearing on the issues here involved, as we view the law of this case.

As we find no reversible errors in any of the court's rulings, the judgment will be affirmed.

*Judgment affirmed, with costs.*