DOROTHY B. AIKMAN *v.* CITY OF WHEELING

(No. 8628)

Submitted March 8, 1938.   Decided April 5, 1938.

*Jay T. McCamic, Wesley R. Tinker, Jr., Benj. L. Rosenbloom* and *Russell B. Goodwin,* for plaintiff in error.

*Austin V. Wood* and *Handlan, Garden & Matthews,* for defendant in error.

MAXWELL, PRESIDENT:

This is a writ of error to a judgment of the circuit court of Ohio County, on verdict, for $5,300.00 in favor of Dorothy B. Aikman against the City of Wheeling.

Of the verdict and judgment, the sum of $300.00 is interest. The principal sum was evidenced by a check for $5,000.00, dated February 13, 1935, drawn by Dorothy B. Aikman, payable to W. H. Pharr, treasurer of the City of Wheeling, and stamped on the reverse side as having been deposited in the Wheeling Dollar Savings & Trust Company by the City of Wheeling March 14, 1935.

The issuance of the check by the plaintiff was the outgrowth of statements by L. G. Burns, an auditor representing the Tax Commissioner of West Virginia, that in an audit conducted by him late in the year 1934 and early in 1935 of the fiscal affairs of the City of Wheeling, he had discovered evidence that John J. Beans, brother of the plaintiff, was short in his accounts as recent clerk of the city.

The check was drawn by the plaintiff in the hope that thereby there would be prevented any publicity of her brother's alleged shortages and that prosecution of him would be prevented. In placing the check in Burns' possession, she constituted him her agent, stating and reiterating to him that the check was not to be turned over to the city unless she was assured there would be no

publicity of her brother's supposed shortage and no prosecution of him.

When the receipt of the check by Burns was reported by him to the Tax Commissioner, that official properly declined to permit any statement to be made on the part of his department that it would favor non-prosecution. Burns was instructed to inform the plaintiff that the matter of prosecution would rest entirely with local authorities. Burns so reported promptly to the plaintiff.

A few days later the plaintiff had a conference with P. J. McGinley, city solicitor of Wheeling, who knew that the check had been issued by the plaintiff and was being held by Burns. McGinley correctly explained to the plaintiff that an undertaking on the part of any public official to prevent the prosecution of her brother by reason of her paying $5,000.00 would constitute the compounding of a felony; that the city would not be a party to any such effort and that the matter of the alleged criminal conduct of her brother would be reported by the city authorities to the prosecuting attorney of the county; and, further, if she did not desire for the check to be used merely as restitution she should cause the same to be returned to her. A few days later, Burns delivered the plaintiff's check to the city treasurer and received a receipt of even date, March 13th.

There is conflict of testimony respecting the events subsequent to the conference between the plaintiff and McGinley. Inasmuch, however, as the verdict was for the plaintiff, it is our duty to view the evidence favorably to her. From the divergence the jury was warranted in believing that on March 13th, while the plaintiff's check was still in possession of Burns, she asked him to return it to her and he ignored her request; that later on the same day, at her solicitation, Frank A. O'Brien, attorney at law, in telephonic communication with McGinley, solicitor, demanded immediate return of the plaintiff's check and was informed by the solicitor that the demand came too late. The jury was also justified in sustaining the plaintiff's denial that in a later conver-

sation with Burns she ratified his delivery of the check to the city. In a written charge, the trial court pointedly and correctly directed the jury's attention to the alleged demand by O'Brien of McGinley on March 13th for the return of the check, and the alleged subsequent ratification by plaintiff of Burns' act in delivering the check to the city. The jury was told that if it found from the evidence that demand for the check was made March 13th, consideration should then be given by the jury to the testimony affirming and denying ratification. These matters were peculiarly within the province of the jury, and its finding thereon must be accepted as the factual basis of this review.

It is the contention of the plaintiff that the check having been delivered by Burns to the city in violation by him of her express instructions and request, and having been received by the city with the knowledge on the part of its representative (city solicitor) that Burns in delivering the check was acting in excess of his authority as her agent, she is entitled to enforce repayment by the city to her of the amount of the check, with interest.

The city defends by charging that the issuance of the check by the plaintiff, and her acts connected therewith, were for the purpose of stifling prosecution of her brother, and that such conduct was illegal and immoral. There is invoked the principle that from an immoral cause no right of action can arise (*ex turpi causa non oritur actio*). Further, it is said, that at the very least the money received by the city must be deemed to have been paid for restitution. The city therefore asserts that the trial court should have left the parties where it found them.

A person who accepts a reward for forbearing to prosecute a felony whereof he has knowledge is guilty of compounding the same. 2 Wharton's Crim. Law (12th Ed.), sec. 1884; 12 Corpus Juris, p. 304. It is a common law offense. IV Blackstone's Commentaries, p. 133; 1 Bishop on Crim. Law (9th Ed.), sec. 712. The rule was exemplified in the English statute, 18 Elizabeth,

Chapter 5. The purpose of the statute was to restrain the making of improper exactions, and not to punish persons by whom such rewards were paid. *Williams* v. *Hedley*, 8 East 378, 103 English Reprint, 388. That is the object of the statute of this state. Code, 61-5-19. By it the receiver of such reward, and not the giver, is punished.

A person who pays money or enters into other contract to procure the suppression of prosecution of himself or another is without right of redress respecting such conduct. Money so paid cannot be recovered. "One who loses his money or his property by knowingly engaging in a contract or transaction which involves his own moral turpitude * * * may not maintain an action for his loss * * * ." *Levy* v. *Kansas City*, (8 Cir.) 168 Fed. 524, 526, 22 L. R. A. (N. S.) 862. The rigor of the rule applies only against one who has entered into contract whereunder he has parted with money or property. Where there was no meeting of minds between him and another, there was no contract. If a proponent has timely withdrawn his wrongful offer, he stands clear. A person who has ventured upon forbidden and dangerous terrain may retreat before becoming swallowed up by its quicksands. If he turns about and departs, the reason for his withdrawal is not consequential. The morass did not engulf him; that is the important thing.

The law is a reasonable institution, built on the experience of mankind through the ages. Among other things, it takes into account human frailties and emotions. To him who moves in deliberation and premeditation it is unyielding, but to him who acts under passionate impulse it is merciful. Also, one may not justify alleged rights grounded on unlawful contract; but if there was no contract of that kind, denial of redress will not be imposed merely because the complainant was willing to enter into such contract but failed. If there was a turning back, that becomes paramount and the reasons for the change of action are inconsequential. The spirit of the law is magnanimity, not vindictiveness. Penalties

are imposed for wrongful conduct, not for improper intentions uncrystallized.

In *Wassermann* v. *Sloss,* 117 Cal. 425, 49 Pac. 566, 38 L. R. A. 176, 59 Am. St. Rep. 209, there was recovery by the owner of certain shares of corporate stock which had been placed by him in the custody of the defendant for the purpose of corrupting United States and Russian officials respecting the sealing industry in Alaskan waters. The court said: "As we view this whole question, the good or bad morals of this undertaking are immaterial, for the reason that the venture was in no sense executed, and until executed both parties are given an opportunity for repentance and rescission. Seeing the error of his ways, the law says a party may withdraw from the transaction; and it extends to him a helping hand by offering the inducement of giving back to him anything of value with which he has parted. Putting this case against plaintiff as bad as may be imagined, he transferred his stock to defendant to be used by defendant in corrupting servants of the respective governments. The transaction progressed no further. The stock was not so used. The precipice which would have been death to plaintiff's cause of action was never reached. No one was corrupted, and the stock was not stained. The parties' intentions as to the use to which this stock was to be put are not the controlling factor. It is not what was intended to be done with the stock that christens the transaction, but rather what was actually done." Consider: *Taylor* v. *Lendey,* 9 East 49, 103 English Reprint, 492; *Falkenberg* v. *Allen,* 18 Okla. 210, 90 P. 415, 10 L. R. A. (N. S.) 494; *Harrington* v. *Boschenski,* 140 Md. 24, 116 Atl. 836; *Loughran* v. *Loughran,* 292 U. S. 216, 54 S. Ct. 684, 78 Law. Ed. 1219; 13 Corpus Juris, p. 501; 6 Ruling Case Law, p. 831.

In overruling the motion to set aside the verdict and award a new trial in the instant case the circuit court, in written opinion, accurately stated: "Had this money been delivered to the city in pursuance of an illegal contract and had the city thereafter failed to carry out its part of such contract recovery would, of course, be de-

nied. It is equally obvious that this is not the situation presented. Not only was no illegal contract ever made, but the making of such contract was promptly and, in the case of Mr. McGinley at any rate, vigorously rejected. The money was turned over to Mr. Burns that he might use it for the purpose of preventing prosecution—that is not denied. It is further not denied that the city had notice of this arrangement. It is further not denied that plaintiff never changed her authority to Mr. Burns. It is further not denied that the city received the money with notice of these conditions—with notice, in other words, that Mr. Burns was to turn it over to the city only on the making of a contract which the city shows it expressly refused to make." This pronouncement effectuates the well fixed principle applied in the cases above.

The plaintiff owed no debt to the city, nor was she obligated to discharge the debt or default of another. There is no contractual justification for the city's retention of her money. Neither did she as a volunteer make payment on another's debt. This is clear because, throughout, she opposed the suggestion of her paying money to the city as restitution *pro tanto*. Consequently, she is obviously entitled to recover in this action, unless because of her own conduct the law denies her reparation. Before a harsh barrier, born of the conscience of the law, may properly be placed across the path of any litigant, vindication of the interposition must be clear and plain. For reasons stated, such situation is not disclosed by this record.

Being of opinion that the case hinges on the fundamental matters above set forth, and that correct solution was reached in the trial court, we deem it unnecessary to discuss other assignments of error, none of which, in our judgment, involved prejudice to the defendant.

The judgment of the circuit court is therefore affirmed.

*Affirmed.*