L. M. WORKMAN *v.* W. M. LEWIS

(No. 9454)

Submitted September 1, 1943. Decided September 28, 1943.

KENNA, JUDGE, dissenting.

*W. W. Smith,* for plaintiff in error.
*Thomas West,* for defendant in error.

RILEY, PRESIDENT:

Plaintiff, L. M. Workman, sought by notice of motion for judgment to recover from W. M. Lewis the sum of four hundred dollars and interest, and plaintiff seeks a reversal of the judgment of the Circuit Court of Cabell County entered upon a verdict in defendant's favor.

According to the testimony introduced on behalf of plaintiff, W. M. Lewis is a physician in the City of Huntington, West Virginia, where plaintiff has been employed by International Nickel Company since 1926. In 1935 plaintiff became a bankrupt and listed defendant as an unsecured creditor for the sum of three hundred dollars, and the parties stipulated to the effect that plaintiff re-

ceived his discharge as a bankrupt, "thereby discharging all his listed [indebtedness] * * * including the claim of defendant". Thereafter, Dr. Lewis continued to attend professionally members of plaintiff's family. In 1941 plaintiff again became indebted to several creditors, and, in order to obtain a loan from plaintiff's employer, Mrs. Cassie Workman, defendant's wife, went to Dr. Lewis' office, where she requested that he certify to plaintiff's employer that the Workmans owed him four hundred sixty-one dollars, promising that, "If you will make out a statement amounting to that much, so that I can get that much money, to pay that off, then beginning the next payday after I receive that money I will begin paying you the bills, until I get them paid off". At that time there was due and owing to Dr. Lewis fifty-three dollars for medical services rendered to plaintiff's son and daughter-in-law, which Mrs. Workman had agreed to pay, and says that the bills she referred to were those "that the boys owed him. (Subsequently an office visit by Mrs. Workman increased her account by two dollars). According to her testimony, she agreed to give Dr. Lewis five dollars "for his trouble to write that paper up when I received this money". Dr. Lewis, without verbal comment, complied with Mrs. Workman's request, and delivered a statement of account to her showing an indebtedness owing him by plaintiff for four hundred sixty-one dollars. Plaintiff gave it to his employer, but in response to the inquiry of what he had told the employer when he delivered the "certificate," he responded, "I just told them I wanted to make a loan of such amount, to pay some bills with. I didn't tell them what bills". A loan for that amount was made to plaintiff, but the check therefor was made payable and delivered to Dr. Lewis, who refused to deliver the proceeds thereof to plaintiff.

The cashier of International Nickel Company testified that the loan has been repaid by plaintiff, and, further, that the employer maintains a regular department for the convenience of its employees when they are in need

of funds for the purpose of taking care, not only of hospital and doctor bills, but also "in case of emergency the company grants the employees an advance to take care of their obligations". In reply to the question, "Is that accommodation furnished to its employees also to avoid their becoming financially embarrassed by attachments or suggestions on their wages?", the cashier replied, "In cases, yes, it has happened". Mrs. Workman details the effort on the part of herself and husband to obtain the money from Dr. Lewis, and quotes him as saying that he "needed the money to pay for medicine which he expected to receive 'in the next day or so' ".

Defendant interposed a defense in two special pleas that the money, which plaintiff claims is due him, was paid by plaintiff to defendant upon a preexisting debt and was a voluntary payment, which plaintiff could not recover. Thereto plaintiff filed special replications, asserting the discharge in bankruptcy and the statute of limitations. The circuit court sustained defendant's motion to strike plaintiff's evidence and direct a verdict for defendant upon the theory that plaintiff was attempting to enforce a contract against defendant which had its inception in fraud, and directed the jury to return a verdict for defendant.

The gist of defendant's contention, consonant with the view of the trial court, is that, under plaintiff's evidence, the parties litigant are in *pari delicto* and therefore not within the protection of the law. The maxim, *"in pari delicto potior est conditio defendentis"*, found in early English cases, both in equity and at law, has been utilized, with this Court's approval, as a defense in chancery suits. *Gay* v. *Gibson,* 101 W. Va. 284, 287, 132 S. E. 717; *Haymond, Admr.* v. *Hyer,* 80 W. Va. 594, 92 S. E. 854; *Horn* v. *Star Foundry Co.,* 23 W. Va. 522. In the case last cited, Judge Green observed that the principle was one with which courts of law were familiar, citing the two early Virginia cases of *Starke's Exec.* v. *Littlepage,* 4 Rand. 368, and *Harris* v. *Harris' Exec.,* 23 Gratt. 737. That the postu-

late upon which the trial court premised its judgment is a salutary one may not be gainsaid.

Our present inquiry, therefore, is to evaluate the transaction which the trial court has labelled as fraudulent. In *Bowyer* v. *Continental Casualty Co.*, 72 W. Va. 333, 338, 78 S. E. 1000, it is stated that, "It requires more than a false statement to prove fraud. It must have been made with intent to mislead and deceive and the injured party must have relied upon it". The situation with which we are dealing, so far as the record shows, is one conceived, not by the plaintiff to whom fraud is charged, but by his wife. Of course, plaintiff completed the transaction by delivery of the statement prepared by Dr. Lewis to his employer. Obviously, since plaintiff has repaid the loan to the employer, it may now be said that no injury has resulted to it. The lack of mischief done to third persons was employed in *Gay* v. *Wendow* (1687), 2 Freeman 101, 2 Eng. Re. 1084, as the consideration for awarding relief to plaintiff in an action at law where an illegal transaction was charged. In *Aikman* v. *City of Wheeling*, 120 W. Va. 46, 195 S. E. 667, money was delivered by plaintiff's agent to the defendant city for use in an illegal transaction which plaintiff herself had proposed. While Mrs. Aikman withdrew therefrom, it was only after the defendant's attorney had rejected the plan. It could not be denied that plaintiff's motive was contrary to public policy, yet she was permitted to recover her money on the ground that the contract was never consummated. The opinion, in part, states that "Penalties are imposed for wrongful conduct, not for improper intentions uncrystallized". While the *Aikman* case is not factually in point, its pertinency to the instant case is suggested because, in the latter, in addition to no mischief having been done by Workman, none was intended. It is not charged here that plaintiff did not intend to repay his employer the money he sought as a loan, and there is no showing that the employer relied upon the factual misrepresentation in lending the money to plaintiff. In

fact, the contrary appears from the testimony of employer's cashier.

The reason for the maxim is stated by Judge Green in the *Horn* case, supra, thus:

"As a general rule the reason why upon such fraudulent or vicious contract neither the courts of law nor of equity will render either party any relief is, that it is obvious, that in refusing relief to either party in such a case the courts very generally adopt the best rule of discouraging the making of such contracts, and it is for this reason and not because the defendant in such a case has any claim on his own account to any favor from the court, that the rule is generally adopted, that the court in such a case will furnish the plaintiff no redress".

An exception, however, is suggested where:

"* * * in a particular case it can be clearly shown that the observance of the rule that the plaintiff will be furnished no relief in such a case would tend to encourage such fraudulent and vicious practices by really giving effect to the objects, which the parties had in contemplation when such fraudulent and vicious schemes were devised, then the courts will not apply the rule, but will permit such fraudulent plaintiff to recover not because of any favor that the court is disposed to show him, but simply because in such a peculiar case the public policy requires, that such recovery or relief should be had against the fraudulent defendant".

See also Williston on Contracts, Rev. Ed. Volume Five, Section 1786. Of course, we do not commend either Mrs. Workman for suggesting the plan to Dr. Lewis or Workman for using Dr. Lewis' statement of account in obtaining the loan, nor can we overlook the fact that Dr. Lewis could have readily refused Mrs. Workman's request. Her going to Dr. Lewis unquestionably was prompted by a confidence she reposed in him as a result of their physi-

cian-patient relationship over a period of many years. Undoubtedly there are many others who repose like confidence in Lewis; and while in the instant situation he may have employed this method of collecting a preexisting indebtedness, which, as we hereinafter show, is barred by the statute of limitations, a denial of relief to plaintiff for a wrong of so slight a character would thus permit Dr. Lewis to reap the benefit of a transaction which may not be labelled as legally fraudulent, and may thus hold for Dr. Lewis a temptation to engage in future similar transactions where the purpose may be other than the collection of a preexisting indebtedness. We believe that public policy is best subserved by requiring Dr. Lewis to account to plaintiff for the money which he wrongfully withholds from him, less such sum as plaintiff admits is due and owing to Dr. Lewis for services rendered.

We cannot subscribe to the theory of defendant's special pleas that the sum which he holds was a voluntary payment for a preexisting indebtedness. The record does not disclose any contract or understanding on the part of plaintiff to sustain Dr. Lewis' claim, and were Dr. Lewis to seek recovery of the preexisting indebtedness from plaintiff in an independent action therefor, the plea of the statute of limitations — a plea which plaintiff has interposed in this proceeding — would undoubtedly bar his right of recovery. Code, 55-2-6. Only an acknowledgment in writing of the indebtedness would prevent application of the bar of the statute. Code, 55-2-8. It follows that discussion of the effect of discharge in bankruptcy is unnecessary.

For the reasons aforesaid we are of the opinion that the trial court erred in directing a verdict in defendant's favor and entering judgment thereon. We therefore reverse such judgment and remand the proceeding for a new trial.

*Reversed and remanded.*

KENNA, JUDGE, dissenting:

I think it is comparatively clear that the purpose of L. M. Workman having his wife procure from Dr. Lewis in 1941 a statement of account showing that Workman owed Lewis the sum of four hundred and sixty-one dollars was to present to the International Nickel Company what he, Workman, believed to be a false statement in order to procure from the company a loan of that amount under that company's highly wholesome plan of loaning its employees the money necessary to tide them over financial crises, among which is the payment of doctors' bills. According to the testimony, Dr. Lewis in giving Mrs. Workman the statement made no comment, although she had told him for what purpose it was to be used.

As a matter of fact the statement that Lewis gave to Mrs. Workman was true and accurate. When Workman went through bankruptcy in 1935 he owed Dr. Lewis three hundred dollars. Bankruptcy does not cancel an indebtedness, but simply renders it legally unenforceable. Interest on three hundred dollars from 1935 to 1941 is one hundred and eight dollars, so that when the amount of fifty-three dollars that Workman then owed Lewis for recent services is added to the principal and interest upon the amount he owed when he went through bankruptcy, the exact sum stated by Dr. Lewis as being Workman's indebtedness of four hundred and sixty-one dollars is the sum. There was no misstatement in Dr. Lewis's bill, although it is likely that Workman believed it to be false.

By the use of the correct statement Workman procured the sum of four hundred and sixty-one dollars as a loan from the Nickel Company. That company, probably in order to prevent exactly what Workman believed he was perpetrating, so far as possible, sent its check to the creditor. Dr. Lewis simply refused to surrender it and applied the amount to the Workman indebtedness.

I believe that the majority has misapplied the maxim, "in pari delicto potior est conditio defendentis". Here Dr.

Lewis is the defendant and Workman is the plaintiff. The plaintiff is being permitted to put into effect, through the courts, exactly the fraudulent misrepresentation that he believed he was perpetrating upon International Nickel Company. As a matter of fact no fraud was perpetrated and no misstatement was made to the company by Workman. He simply believed that he was telling an untruth, thinking that going through bankruptcy wiped out, in every way, his debts. Instead, the Lewis statement of fact was correct. The money went to Dr. Lewis who had not expressly obligated himself to turn it over to Workman. Perhaps he should not have remained silent, in the face of Mrs. Workman's voluntary assurances, but acquiescence in a true statement when a fraudulent misstatement is the purpose I do not believe involves the maxim, "in pari delicto" nor do I believe that it is opposed to public policy, certainly not to the extent that cheating under the helpful credit setup of International Nickel Company is. I would affirm the trial court which denied recovery.