**In re B & L OIL COMPANY, Debtor.**

**Garry R. APPEL, Trustee, Plaintiff,**

v.

**MAINSTAR OIL COMPANY and Wood County Bank, Defendant.**

Bankruptcy No. 82 B 4065 Mc.
Adv. No. 83 G 1726.

United States District Court,
D. Colorado in Bankruptcy.

Feb. 19, 1985.

732

Rothgerber, Appel & Powers by Garry R. Appel, Denver, Colo., for plaintiff.

Kirk P. Brady and Harold W. Wilson, Denver, Colo., for defendant Wood County Bank.

## ORDER

JAY L. GUECK, Bankruptcy Judge.

Garry R. Appel ("Appel") is the Trustee for B & L Oil Company ("B & L"), the debtor in this Chapter 11 case, filed on September 7, 1982. Appel has commenced this action pursuant to 11 U.S.C.A. § 542(b) to recover money from Mainstar Oil Company ("Mainstar") and Wood County Bank ("Bank"), which Appel contends constitutes property of the estate.

The facts, established by stipulation of the parties and the evidence submitted herein, are as follows:

B & L Oil is a West Virginia corporation and owns certain oil and gas leaseholds in West Virginia. Mainstar purchased oil from B & L's leases, for which Mainstar became indebted to B & L in the amount of $35,549.47.

Mainstar also engaged in certain business transactions with an entity known as

"Oil Development Company" ("Oil Development"), also referred to as "Alan Gable Oil Development Company." Oil Development obtained a line of credit on May 10, 1983, from Wood County Bank in West Virginia, in the amount of $150,000.00. This line of credit was funded from time to time, and was secured by a Security Agreement covering all inventory of crude oil and accounts receivable of Oil Development then owned or thereafter to be acquired. Financing statements perfecting these security interests were filed in the office of the Clerk of Wood County Commission, West Virginia, and the office of the Secretary of State of the State of West Virginia. These filings were on May 17, 1983 and May 26, 1983, respectively. In addition to the Security Agreement, the advances made against the line of credit were further conditioned and secured by a letter, dated May 9, 1983, from Wood County Bank to Mainstar Oil wherein Mainstar was directed to pay all funds it may owe to Oil Development for oil payments due on or after May 9, 1983, directly to Wood County Bank. Mainstar acknowledged and accepted this directive on May 9, 1983.

Thereafter, the Bank received four checks from Mainstar, on Mainstar's account with the Bartlett Farmers Bank of Bartlett, Ohio, payable to "Wood County Bank for Oil Development Co. % William Crites." These checks totaled $35,549.47. The check stubs accompanying these checks identify specific "FARM", "TICKET," and other data pertaining to each particular check. This information specifically described Farm No. 7570, which is a farm arrangement in which Mainstar was involved with B & L, not Oil Development. An examination of these stubs supports the conclusion that the obligations presented by these stubs were incurred post-petition. In any event, the checks were mailed directly to Wood County Bank and were deposited directly to the account of Oil Development Co., becoming a part of the general funds of Oil Development Co. The checks were not endorsed to Wood County Bank.

From time to time, debits were made by the Bank against the Oil Development account, purportedly pursuant to the provisions of the security instruments, in payment of advances made under the line of credit. The aforementioned $35,549.47 was part of the funds so set off.

Mainstar now acknowledges that the monies it mailed to the Wood County Bank for Oil Development Co., in the amount of $35,549.47, were paid to the Bank by mistake, and should have been paid to B & L in payment of obligations owed by Mainstar to B & L.

It appears Mainstar owed funds to Oil Development, as well as to B & L, at the time the checks herein involved were forwarded to Wood County Bank. The Bank's disposition of those funds was in accordance with instructions of Oil Development and pursuant to the business relationship between Oil Development and the Bank. Nothing in the evidence indicates the Bank had any knowledge or reason to know that any of the funds provided by Mainstar to the Bank for Oil Development and deposited to the account of Oil Development belonged to or were in any way the property of B & L Oil or Garry R. Appel, its Trustee. Further, there is nothing in the evidence to indicate Mainstar did not owe sums to Oil Development in an amount at least equal to the amounts of the checks at the time those checks were sent to the Bank.

Appel has agreed with the Bank that, if judgment is rendered against the Bank, he will attempt to collect against Mainstar first. Appel has alleged that Mainstar owes the aforementioned sums, plus other additional amounts to B & L and that these sums constitute a debt which is property of the estate which is matured or payable on demand, under § 542(b) of the Bankruptcy Code. Appel then alleges that, as a result of the foregoing facts, Wood County Bank also owes the $35,549.47 to B & L as a debt that is property of the estate and is matured or payable on demand, under § 542(b) of the Code.

The issue presented with respect to Wood County Bank is whether this bankruptcy estate is entitled, under § 542(b), to

recover from a third-party (Bank) funds which it received by mistake from a party (Mainstar) who owed those funds to the debtor.

## I. *Liability of Mainstar*

Judgment has already entered, by default, against Mainstar. That judgment was entered on July 23, 1984, in the amount of $66,104.92, plus costs in the amount of $60.00. Leave was granted for Appel to file an appropriate motion to amend the judgment to include interest from the date of sale, to the extent permitted by Colorado law.

On August 6, 1984, Appel filed a motion to amend the judgment with a supporting affidavit. Interest was computed at 8% per annum from the date the invoices were due, and was not compounded. Colorado law provides in 1973 C.R.C. § 5–12–101, *et seq.*, for interest at 8%, compounded annually. Thus, there remains some confusion with respect to the interest computation.

Further, judgment was entered in the amount of $66,104.92, as requested in the motion for default judgment. Paragraph 6 of the motion for default judgment states that the amount of that requested judgment is based, in part, on the checks attached to the motion as Exhibits A through G. Appel represents that the checks total $62,119.63. However, my calculations indicate the total is $75,629.10.

The interest calculation is based on checks which are in excess of the amount of the judgment. Thus, either the interest calculation is in error or Appel did not request judgment in an amount supported by the evidence.

A hearing will be set to clarify the interest computations and finalize the default judgment against Mainstar.

## II. *Liability of Wood County Bank*

The action against Wood County Bank was brought under 11 U.S.C. § 542. The allegations are patterned after § 542(b). That section provides:

"(b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor."

The Complaint alleges that the Bank "owes a debt that is property of the estate and that is matured or payable on demand." However, it is clear that if the Bank owes such a debt to B & L, it derives from the debt actually owed by Mainstar and mistakenly paid to the Bank of the account of Oil Development.

The first question to be addressed is whether the action is properly under § 542 or if it is a common law lawsuit brought under the guise of a turnover proceeding under § 542. The reason such an inquiry is important is that if the matter is truly an action simply seeking an order to turn over property of the estate, it is a core proceeding subject to final order in the bankruptcy court. *See* 28 U.S.C. § 157(b)(2)(E). If this is a common law lawsuit, it is simply a related proceeding, wherein the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district judge. *See* 11 U.S.C. § 547(c)(1); General Procedure Order 1984–3. By consent of the parties, the bankruptcy judge may enter final order in such matters, subject to review under 11 U.S.C. § 158. *See* 11 U.S.C. § 157(c)(2). No such consent has entered here.

No contention is made that the Bank owes B & L any debt unless it is based on the mistaken receipt by the Bank of money from Mainstar, who owed the actual debt to B & L. The obligation of Mainstar was not yet in existence on September 7, 1982, when B & L filed its Chapter 11 case. The obligation and cause of action arose in 1983, during the pendency of B & L's bankruptcy. An initial reading of the legislative history indicates that subsection (b) of § 542 "requires an entity that owes money to the debtor as of the date of the petition,

or that holds money payable on demand ... to pay the money to the order of the Trustee." H.R.Rep. No. 95–595, 95th Cong. 2nd Sess. 369 (1977); S.Rep. No. 95–989, 95th Cong. 2nd Sess. 84 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5870, 6325. Neither Mainstar nor Wood County Bank owed the debtor the monies in question on the date of the petition.

However, the foregoing statement from the legislative history is not entirely accurate, in that § 542(b) provides for the turnover of "property of the estate." 11 U.S.C. § 542(b). Pursuant to the provisions of 11 U.S.C. § 541(a)(7), property of the estate includes any interest in property that the estate acquires after the commencement of the case. This section was added to the Bankruptcy Code in 1978. Thus, if a debt incurred during pendency of the case is established, it would be included as part of the bankruptcy estate under 11 U.S.C. § 541(a)(7). It must also be established that a "debt" from the Bank is "matured" or "payable on demand." 11 U.S.C. § 542(b).

This is where denomination of the within action as a "turnover" proceeding falls short. It was held in *Stahl v. Ohio River Co.*, 424 F.2d 52 (3d Cir.1970) that a claim for contribution is not a "matured claim" within the federal rule permitting claims which have matured after filing of the party's pleading in an action, to be pleaded with permission of the court because it is contingent upon a verdict and a judgment establishing liability. Similarly, it has been determined that prior to termination of an action favorably to a defendant, a claim for malicious prosecution is not a "matured claim" giving rise to a cause of action. *Alexander v. Petty*, 35 Del.Ch. 5, 108 A.2d 575 (1954).

In *In re Rawson*, 40 B.R. 167 (Bankr.N. D.Oh.1984), the trustee brought an action against various parties who had agreed to purchase the debtor's interest and that of a third party in an Ohio partnership. The complaint alleged claims for relief sounding in breach of contract, unjust enrichment, turnover of property of the estate and fraudulent conveyance. The turnover portion of the action was predicated upon § 542(b) wherein it was alleged that the defendants owed a debt that is "matured, payable on demand, or payable on order." The debt allegedly owed was the damages resulting from the alleged breach of contract. A motion to dismiss or for summary judgment was filed, and the defendants argued that the action was not a debt that was matured, payable on demand or payable on order, but was merely a cause of action on a debt. Thus, it was contended the matter was a "related proceeding" under the Emergency Rule then in existence.

The bankruptcy court rejected the defendant's argument on the basis of the allegations of the complaint, allowing the matter to go forward for proof of the alleged facts at trial. The court found it did have subject matter jurisdiction over the trustee's complaint. I disagree with that analysis as being applicable under the new Bankruptcy Act of 1984. If that analysis is followed, any common law contract action, such as that involved in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), could be alleged in the bankruptcy court as a "turnover proceeding". It is clear to me that under the Bankruptcy Code as promulgated in 1984, and as implemented in the jurisdictional amendments contained in Title 28 of the U.S.Code, the action herein is more appropriately denominated as a "non-core proceeding" that is "otherwise related to a case under Title 11." *See* 28 U.S.C. § 157(b) and (c). This does not simply involve "orders to turnover property of the estate" as contemplated in 28 U.S.C. § 157(b)(2)(E).

This is consistent with the holding in *In re BSC Audio, Inc.*, 35 B.R. 722 (U.S.D.C. W.D.Ark.1983), aff'd. 721 F.2d 224 (8th Cir. 1985), relating to jurisdiction under the 1898 Bankruptcy Act. There, it was held that the Bankruptcy Act did not grant jurisdiction to a referee to adjudicate controversies over property in the actual or constructive possession of a third party unless there was no question that the third party

had no good-faith defense in law or in fact to the claim asserted, so that there was no bona fide dispute over the facts.

Further, based upon the foregoing authority relating to a "matured" debt, in my view there is no debt that has matured in this matter until such time as the adversary action is concluded in favor of the Trustee. At that time, if the proceeds of any judgment which might be rendered in favor of the Trustee are not paid in due course into the estate, an action for turnover will lie under 11 U.S.C. § 542(b).

Thus, it is my determination that the complaint against the Bank is one alleging a common law cause of action for the tort of money had and received. It is cognizable under state law, and is a non-core proceeding related to this Chapter 11 case. Accordingly, I shall enter the foregoing findings as proposed findings, and the following conclusions as proposed conclusions of law.

### CONCLUSIONS OF LAW

■ The Complaint sets forth causes of action which appear to sound in the tort of money had and received. This tort is a rather ubiquitous cause of action. It is founded on the principle that no one ought to be unjustly enriched at the expense of another. The action can be maintained in all cases where one person has received money or its equivalent under circumstances that in equity and good conscience ought not to be retained. *Stone v. White*, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937). This tort is flexible in nature and is not restricted by technical rules. *Id. See also* 66 Am.Jur.2d, Restitution and Implied Contracts, § 156, p. 1087.

■ A cause of action for money had and received may be maintained by the plaintiff to whom money is owed directly against a defendant to whom money was erroneously paid by a third party. *Heywood v. Northern Assurance Company of Detroit, Michigan*, 133 Minn. 360, 158 N.W. 632 (1916). At least one court has gone so far as to state:

"It is immaterial how the money may have come into the defendant's hands, and the fact that it was received from a third person will not affect his liability if in equity and good conscience, he is not entitled to hold it against the true owner." *Empire Oil Company v. Lynch*, 106 Ga.Apps. 42, 45, 126 S.E.2d 478, 479 (1962).

■ Additionally, the fact that the plaintiff has a right of action against the third party, by whom payment was made, does not destroy the plaintiff's cause of action against the defendant who received the money. *Heywood v. Northern Assurance Company of Detroit, Michigan, supra.*

Facts somewhat similar to those in the case before me were presented in *Bates v. Bates*, Ky.Apps. 399 S.W.2d 716 (1966). In *Bates*, the plaintiff and defendant owned adjoining tracts of land. A coal company leased both parcels and began underground mining. Both leases provided for a royalty based on the tonnage of coal removed. There was only a single access tunnel to the mine. This tunnel ran below both parcels. As a result of an engineering mistake, some of the coal removed under the plaintiff's land was credited to the defendant. Therefore, the defendant received a royalty on the coal to which the plaintiff was entitled. The plaintiff brought suit directly against the owner of the adjoining land to recover the royalties erroneously paid to that adjoining land owner. The Kentucky Court of Appeals, based upon the state law of Kentucky, affirmed the judgment in favor of the plaintiff and against the defendant adjoining land owner for the royalties erroneously paid to that land owner.

■ In order to recover here, Appel must establish that he has a claim under state law. From a review of the file, it appears that the substantive law of either Colorado or West Virginia should control.

Both Colorado and West Virginia recognize the tort of money had and received. *Workman v. Lewis*, 126 W.Va. 6, 28 S.E.2d 56 (1943); *Agate Co. v. Sigman*, 83 Colo. 464, 266 Pac. 209 (1928). Both states have

reported cases allowing the recovery of money mistakenly paid to the defendant by a third person. *Workman v. Lewis, supra; Mumford v. Wright,* 12 Colo.Apps. 214, 55 Pac. 744 (1898).

While both states recognize the cause of action, there appears to be a difference in the criteria for recovery, although both states require a showing that the defendant is not entitled to retain the funds. *Workman v. Lewis, supra; Mumford v. Wright, supra.* The question then revolves around the good faith of the defendant-recipient, with West Virginia and Colorado appearing to take opposite positions.

The majority rule is that a plaintiff cannot recover from a defendant who received funds from a third party in good faith and under a claim of right, even though the claim of right later proves to be groundless. *Third Natl. Bank v. Rice,* 161 F. 822 (8th Cir.1908); *see also* 66 Am.Jur.2d, Restitution and Implied Contracts, § 157, p. 1089. Neither Colorado nor West Virginia have well developed law in this area. However, it appears that West Virginia would follow the majority rule, while Colorado would not.

Two Colorado cases are noted with respect to this issue. The first is *Mumford v. Wright, supra.* There, Mumford was the assignee of a judgment received by Friend E. Wright against the Sheriff of Boulder County. This judgment was reversed by the Court of Appeals and the case remanded. Wright received a favorable judgment at the second trial as well. The second judgment was then assigned by Wright to one John T. Wright. The judgment debtor satisfied the judgment by paying the money into the registry of the court. Mumford claimed and received the money. John T. Wright then brought suit directly against Mumford to recover the funds resulting from the judgment.

The trial court held that the assignment of the first judgment was invalid and that the plaintiff, John T. Wright, was legally entitled to the money. The Court of Appeals then affirmed the trial court judgment in plaintiff's favor and stated:

"The rule is that an action for money had and received is proper when the recovery is sought of money which defendant has received, and refused to pay on demand to. the plaintiff who is entitled to it. *Stanwood v. Sage,* 22 Cal. 516; *Tutt v. Ide,* 3 Blatchf. 249.

"And we see no reason why the fact that the party claimed to have received it rightfully and under a claim of its ownership, should make any difference in the rule. This form of action is provided for cases where money has been received by one person, which rightly and justly belongs to another." *Mumford v. Wright, supra,* 12 Colo.App. at p. 200, 55 P. 744.

The second Colorado case dealing with the receipt of money from a third person is *Wysowatcky v. Denver-Willys, Inc.,* 131 Colo. 266, 281 P.2d 165 (1955). In *Wysowatcky,* the defendant received a check drawn by the former guardian of three minors. Plaintiff, the present guardian, alleged that by drawing the check, the former guardian had breached his fiduciary duties. Recovery was sought directly from the defendant-recipient. The Supreme Court indicated that recovery would not be allowed against the defendant if he had no knowledge of the breach of trust. It should be noted, however, that *Wysowatcky* is based solely on the Uniform Fiduciary Act, which had been enacted in Colorado. *Mumford* was not discussed. It appears that *Wysowatcky* should not be read too broadly, but should be confined to those cases wherein the Uniform Fiduciary Act applies. *Mumford* still appears to be the law of Colorado.

The only West Virginia decision dealing with the receipt of money from a third person is *Workman v. Lewis, supra. Workman* does not specifically address the issue, but the holding appears to follow the majority rule. In *Workman,* the plaintiff, L.M. Workman was an employee of the International Nickel Company. The defendant, W.M. Lewis, was a physician who rendered medical services to Workman. Workman became a bankrupt and listed Lewis as an unsecured creditor for the sum

of $300.00. This debt was discharged in the bankruptcy. Thereafter, Dr. Lewis continued to treat members of the plaintiff's family and additional bills for services rendered were incurred. In an effort to obtain a loan from plaintiff's employer, plaintiff's wife went to Dr. Lewis' office and requested that he certify to plaintiff's employer that the Workmans owed him $461.00, promising that from such sum Dr. Lewis would be paid monies then owed to him. By virtue of this scheme, the plaintiff's employer granted the loan, but paid the proceeds directly to Dr. Lewis. Dr. Lewis refused to remit any portion to Workman. Workman then brought suit to recover the monies paid to Dr. Lewis pursuant to the Workman-Lewis scheme.

The majority found that, although both plaintiff and defendant entered into a fraudulent scheme, public policy would best be served by requiring Dr. Lewis to account to the plaintiff and return the money to plaintiff, less such sums as Workman admits to be due and owing to Dr. Lewis. The dissent found that the $461.00 was equal to the amount of the discharged indebtedness together with the post-discharge bills incurred and that, therefore, Dr. Lewis had submitted a true and accurate statement. According to the dissent, the plaintiff was the only one who engaged in a fraudulent conduct and would have denied recovery to the plaintiff.

■ Important to the consideration here is the fact that the West Virginia court at least grappled with the good faith of the parties in determining the right to recovery.

The most appropriate choice of law rule for this Court to apply is that which would be applied by the state court of Colorado. *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The Colorado choice of law rule applied in tort cases requires application of the substantive law of the state with the most significant relationship with the occurrences and parties involved. *First National Bank in Fort Collins v. Rostek*, 182 Colo. 437, 514 P.2d 314 (1973).

B & L Oil is a West Virginia corporation. Wood County Bank is located in West Virginia. The oil wells which give rise to the debt in question are located in West Virginia. The only contact with Colorado is that B & L Oil filed its bankruptcy petition in Colorado. Thus, in my view, West Virginia clearly has the most significant contacts with the parties and the occurrences involved in this case. Accordingly, the substantive law of West Virginia should apply.

■ Under the Stipulated Facts, the payment that was made directly to Wood County Bank, under normal banking practices, would have vested title directly in the Bank. *Union Properties v. Baldwin Brothers Co.*, 141 Ohio St. 303, 47 N.E.2d 983 (1943). A debtor-creditor relationship is then created between the Bank and the depositor. However, in this case, the check was in the nature of a "special deposit", according to the Stipulated Facts. When a special deposit is made, title to the money vests directly in the depositor. *Id.* The Bank holds the money as a bailce.

■ The Bank's receipt of money here was consistent with that of a special deposit. Thus, ownership in the Bank occurred only at the time it made the setoff. The Bank acted in good faith when it made this setoff. No contention is made by the Trustee that the Bank ever acted other than in good faith. The Bank had a bona fide claim against all monies held by Oil Development Company at all times herein involved. Under these circumstances, I would conclude that West Virginia law would not permit recovery from Wood County Bank by the Trustee.

Further, under either the law of West Virginia or of Colorado, the Trustee, Appel, has failed to make out a prima facie case. In order for Appel to recover under the tort of money had and received, he must show that the Bank is not entitled to retain the money. *Workman v. Lewis, supra; Mumford v. Wright, supra.* The only showing Appel has made in this regard is in Stipulation No. 8 which simply acknowledges that the money was paid to the Bank for Oil Development Company by mistake. No-

where is it indicated that either the Bank or Oil Development Company is not legally entitled to the sums in question. Paragraph 2 of plaintiff's Exhibit 3 indicates that Mainstar was indebted to Oil Development Company. If the debt had not been satisfied at the time payment in question was made, Oil Development would have had a valid legal claim against Mainstar. I have found no decisions which have allowed recovery of money from a defendant who received that money in satisfaction of a valid debt owed by a third party except where the money was obtained by theft or other fraudulent conduct. The essential question is whether in "equity and good conscience" the Wood County Bank is entitled to retain the money. In my view there is no action on the part of the Bank that should, in equity and good conscience, deprive it from retaining the sums in question.

Accordingly, it is my recommended conclusion that the substantive law of the state of West Virginia should apply, but that under the law of either Colorado or West Virginia the Trustee has failed to establish a cause of action against the Wood County Bank in this action.